IN RE JUVENILE APPEAL (DOCKET No. 9489)*

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book, 1978, § 3161, the names of the parties involved in this appeal are not disclosed and the records and briefs will not be distributed to the various libraries of the state. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

Argued December 5, 1980—decision released January 20, 1981

*James H. Throwe*, for the appellant (defendant father).

*Richard T. Couture*, assistant attorney general, with whom, on the brief, was *Carl R. Ajello*, attorney general, for the appellee (plaintiff).

*David H. Rivers*, for the minor child.

ARMENTANO, J. The commissioner of children and youth services petitioned the court for the termination of the parental rights of the parents of a minor child born November 29, 1975. The mother has consented to the termination of her parental rights with respect to said child. General Statutes § 17-43a (a) (5). After a court hearing, the trial court found that the father had (1) abandoned his infant son and (2) lacked an ongoing parent-child relationship. General Statutes §§ 17-43a (a) (1), 17-43a (a) (4). As a result of these findings, the trial court terminated the parental rights of the father, from which decision the father appeals. Our holding on the issue of abandonment is dispositive of this appeal.

"The termination of parental rights is defined as 'the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . .' General Statutes § 45-61b (g). It is 'a most serious and sensitive judicial action.' *Anonymous* v. *Norton,* 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). 'Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 [1972]; see *In re Appeal of Kindis,* 162 Conn. 239, 240, 294 A.2d 316 [1972]; *Cinque* v. *Boyd,* [99 Conn. 70, 82, 121 A. 678 (1923)].' *Anonymous* v. *Norton,* supra, 425. See *Alsager* v. *District Court of Polk County, Iowa,* 406 F. Sup. 10, 22–24 (S.D. Iowa 1975), affirmed, 545 F.2d 1137 (8th Cir. 1976)." *In re Juvenile Appeal (Anonymous),* 177 Conn. 648, 671, 420 A.2d 875 (1979); *In re Juvenile Appeal (Anonymous),* 181 Conn. 638, 640, 436 A.2d 290 (1980).

The commissioner of children and youth services in petitioning to terminate parental rights in the absence of consent must allege and prove abandonment as set forth in § 17-43a. The statutory criteria must be strictly complied with before termination can be accomplished. *In re Juvenile Appeal (Anonymous),* supra, 644–45.

In its memorandum of decision, the trial court stated its decision on the legal and factual issues in the case and the factual basis for its decision. Practice Book § 3060B. The following facts

were found: The mother is not married to the father. The father never offered to assist for prenatal care, medical or hospital expenses or to help the mother establish a home for the child after his birth. On a number of occasions, the father refused to acknowledge paternity of the child. It was not until August 3, 1977, when the child was twenty months old and only after he had been assured that he would not be held liable for preacknowledgment expenses, that he acknowledged paternity. The father failed to contribute to the support of the child even though the child was cold, sick and in need of adequate lodging. For a long period of time, the father failed to visit the child or display any love and affection for him. There was no personal interaction between the father and the child. The father did not concern himself with the child's welfare. On one occasion, the father forcibly removed the child to the home of the father's mother. Repossession of the child by the child's mother was obtained with the aid of the police.

Our General Statutes have clarified the meaning and definition of abandonment. Section 17-43a (a) (1) reads: "The parents have abandoned the child in the sense that they have failed to maintain a reasonable degree of interest, concern or responsibility as to the child's wefare." Abandonment focuses on the parent's conduct. It is a question of fact for the trial court "which has the parties before it and is in the best position to analyze all of the factors which go into the ultimate conclusion that [the statutory standard of abandonment] has been satisfied." *In re Adoption of Webb,* 14 Wash. App. 651, 657, 544 P.2d 130 (1975). From a recital of the facts above and the father's course of conduct, it is apparent that the father manifested no reasonable

degree of interest, concern or responsibility whatsoever as to the child's welfare and the trial court so found.

In *In re Adoption of Webb,* supra, the court found that the father had abandoned the child "under circumstances showing a wilful substantial lack of regard for parental obligations." Wash. Rev. Code § 26.32.040 (4). The court stated as follows: "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." *In re Adoption of Webb,* supra, 653. In this case, we are of the opinion that the father has failed to meet the first four minimum parental obligations.

We conclude that the findings of subordinate facts amply support the conclusion reached on the issue of abandonment and that no erroneous rule of law was applied by the trial court. The trial court did not err in concluding that the father had abandoned his child as the word abandonment is defined in § 17-43a (a) (1) of the General Statutes.

There is no error.

In this opinion the other judges concurred.