[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: GUARDIANSHIP
This is a petition brought by mother, now deceased, and maternal aunt to remove father as guardian of the minor child Helen B., born September 21, 1983. The petition was originally filed in New Haven Probate Court on December 24, 1992, when the child was 9 years old. At that time, the mother was terminally ill and hospitalized and the child was being cared for by the aunt. Mother consented to her removal as guardian, with joint legal custody. On November 10, 1993, while the case was still pending in probate court mother died. On December 1, 1993 after hearing, the Probate Court granted temporary custody to the aunt, pending completion of a guardianship study being prepared by the Department of Children and Families ("DCF") and hearing on "permanent custody." On January 27, 1994, the matter was transferred to this court for trial.
Thereafter, after further proceedings, the petition was amended on January 18, 1995 and an amended statement of facts was filed on January 24, 1995. The amended petition alleges that the minor child was abandoned and denied proper care by father. Connecticut General Statutes § 45a-610 (2) and (3). The case was tried over the following months, transcripts were ordered, and the parties submitted briefs, the last brief being filed on June 7, 1996. The child is now twelve years old and has lived with her aunt for over 3 years, with the father having regular visitation.
After reviewing the evidence, the court makes the following findings: The child resided with both parents and her two older half-siblings from mother's prior relationship until she was eight years old, when father moved out. The parents had a stormy relationship with repeated episodes of domestic violence aggravated by substance abuse, particularly by mother. The aunt always assisted mother in caring for the children, taking them on weekends and other times when domestic violence or substance abuse prevented CT Page 5114-BBBBB mother from caring for the children, especially Helen.
Father and aunt also had a conflictual relationship. In 1980, prior to Helen's birth, aunt reported to DCF that father had sexually abused the sister, who was 7 at the time. The children were removed from the home and placed with a great aunt. The investigation was inclusive, father moved out, the sister recanted, saying aunt pressured her, and the children were returned to mother. Resp Exh. 2, DCF Treatment Plan Review.
At trial, the aunt related her present difficulties with father to this incident. She also testified to her daily involvement in Helen's life since birth, culminating in her assuming physical custody when mother became too ill to care for her.
The half-sister also testified, and renewed the allegations of sexual abuse by father, stating that it resumed when she was returned home and continued until she was 14. She stated that mother told them not to tell relatives when father moved back in and tried to keep them away from the aunt for turning father in, and that she continued to keep silent because her mother did not want to believe her. She also testified to constant fighting, substance abuse, and domestic violence, and that she could always turn to the aunt for assistance. She further testified that after mother threw father out for illegal liquor sales from the home, he started selling cocaine and that she sold drugs for him for a short period.
Father testified, vehemently denying these allegations, blaming all of the problems on mother's substance abuse and aunt's interference. He explained his alleged illegal liquor sales as a pooling arrangement among friends to buy weekend beer. Although he admitted an arrest for breach of peace, he denied any knowledge of a temporary restraining order for domestic violence. He explained his drug and weapon arrests as "holding" for friends. His arrests did not result in convictions for drugs or weapons.
DCF prepared a guardianship study which recommended guardianship to aunt because of her continued care for the child and the child's strong desire to remain with the aunt Pet. Exh. A. Dr. Anthony Campagna evaluated all the parties, and also recommended that the child remain with the aunt. Pet. Exh. B. Mother, by deposition and in her will stated that she wanted the aunt to have custody of the child not father. Pet. Exh's. E and G. CT Page 5114-CCCCC The child was interviewed in chambers on two occasions and consistently expressed her desire to live with her aunt and visit her father.
Petitioner first claims that father has abandoned the child in the sense that he has failed to maintain a reasonable degree of interest, concern, or responsibility for the child's welfare. Connecticut General Statutes § 45a-610(3). In support of this claim, petitioner cites father's lack of involvement in the child's education, his failure to provide financial support over the past 5 years, and his history of criminal involvement and arrests which place him at risk for incarceration.
"Where a parent fails to visit a child, fails to display any love or affection for the child has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred. In re Juvenile Appeal, 183 Conn. 11
(1981)," In re Migdalia M., 6 Conn. App. 94, 209 (1986). There is no evidence to support such a finding in this case. To the contrary, the evidence presented by both parties established that father has always visited the child and has a warm and loving relationship with her. As a non-custodial parent, father is not expected or responsible for the child's every day welfare. He has always participated in her upbringing to the extent his custodial status allowed Id., at 210.
Petitioner has cited Garrett's Appeal from Probate, 237 Conn. 233
(C.L.J. 6/4/96) to support her claim that abandonment may be established based on father's failure to pay child support to the state since April 5, 1991, resulting in a substantial arrearage. This case is distinguishable from Garrett, however, since father was unemployed or underemployed during this time and there has been no showing of ability to pay or that the child's welfare was ever affected by his failure to pay the state for his share of her support, which is provided by AFDC. To the contrary, the evidence established that the father did maintain and contribute to the household when working full-time and thereafter continued to buy her clothes and other gifts and take her out for meals and other excursions.
Thus, although father may be derelict in his financial responsibilities to the state, it does not rise to the level of proof of abandonment of the child by clear and convincing evidence Connecticut General Statutes § 45a-610. CT Page 5114-DDDDD
Petitioner next alleges that the child "has been denied the care, guidance, or control necessary for physical, educational, moral or emotional well-being, as a result of acts of parental commission or omission, as defined by law, up to and including the present time." Amended petition, dated 12/20/94. The statute further describes the acts of commission or omission as acts which are the result of "conditions attributable to parental habits, misconduct or neglect, and the parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not in the best interests of the child be permitted to exercise, parental rights and duties at this time" Connecticut General Statutes § 45a-610(3).
Although the father has no convictions for drug or weapons charges, the evidence clearly established that father engages in illegal activities. He admitted to having a "beer-buying club," with the stepson and his friends, but not to illegal liquor sales. (Tr. 6/26/95, pp. 106-108 and 116-118). He admitted to possession of cocaine on at least two occasions, but claimed to be holding for friends. (Tr. 6/26/96, pp. 123-126).
A police officer testified that on April 22, 1993, father was found in possession of a handgun and 29 bags of cocaine. (Tr. 7/20/95, pp. 42-44). Another police officer testified to father's possession of 35 bags of cocaine and cash on December 22, 1993. (Tr. 3/28/95, p. 83). During the course of the trial, he was arrested on a weapons charge. (Tr. 7/20/95, pp. 28-30).
Adding to this background the admitted history of family violence when the child was in the home and the troubling testimony of sexual abuse to the sister when she was a minor, it is clear that the child has been denied the proper care necessary for her well-being as a result of father's habits and misconduct and that it is not in the child's best interests for father to exercise parental duties at this time. Father's misconduct and disrespect for the law and for the child's need for a safe and secure home has been a continuing course of conduct throughout the child's life, both while the child was in his care and continuing to the time of trial.
It is important to note that this is not a case of abuse or neglect or termination of parental rights. The burden of proof, by clear and convincing evidence, protects the parent's right to care and custody of his child. However, the statutory grounds for removal of guardian under § 45a-610(3) specifically include CT Page 5114-EEEEE reference to parental habits or misconduct or deficiencies as it affects the parent's continuing ability to parent in the best interests of the child. Thus, the cases cited by respondent discussing similar language in termination or neglect decisions are not directly applicable to this guardianship proceeding.
It is absolutely clear, based on the recommendations of DCF and Dr. Campagna and the strong preference of the child, that it is in her best interest to remain in the care and custody of her aunt, who has faithfully attended to her needs. It is equally clear that to remove the child from her aunt's custody and grant custody to her father, where she has no desire to live, or spend the night, or even to visit without a playmate, would be detrimental to her best interest. The child has lost her mother and found comfort and security with her aunt, where she wants to stay. She should not be forced by legal principles to suffer another loss. This is what is meant by interpreting a statute in accordance with the best interests of the child. Connecticut General Statutes § 45a-605.
Accordingly, the petition is granted for the reasons stated. Father is removed as guardian and petitioner is appointed as guardian pursuant to Connecticut General Statutes § 45a-616 and 617, subject to the right of reasonable visitation to the father, including such reasonable overnights, weekends and vacations as the father and child both request, for which permission shall not be unreasonably withheld.
So ordered
_____________________________ Karen Nash Sequino, Judge CT Page 5115