[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Department of Children and Families (DCF) filed petitions to terminate parental rights with respect to April L. (d.o.b. April 1, 1993) and Angel L. (d.o.b. March 16, 1994). The children's mother, Petra R.[1], and their father, Rudy L., were named as respondents in this action. (The biological parents were never married to each other.) CT Page 3479
The termination petitions were originally filed with the Superior Court for Juvenile Matters in Hartford on September 29, 1995. The case was subsequently transferred to this venue for trial. In each petition, DCF alleged three statutory grounds for termination under the applicable subsections of C.G.S. §17a-112: abandonment, parental failure to rehabilitate, and no on-going parent-child relationship. DCF alleged with respect to each of the counts that the grounds for termination had existed for less than one year, but that waiver of the statutory "one year requirement" was necessary to promote the best interests of the children. On February 21, 1997, by agreement of all parties, the court granted petitioner's motion to amend. The amended TPR petitions set forth additional factual allegations against each respondent.
PROCEDURAL HISTORY
This matter originally came to the attention of the court on November 10, 1994, when DCF received ex parte orders of temporary custody and filed neglect petitions with respect to each of the children. The petitioner had assumed physical custody of April, Angel and two other siblings on the day before. Hartford Police found the four children living in a "filthy" apartment on Washington Street which had no food, heat or electricity. (Petitioner's Exhibit 3, Page 6). The whereabouts of both biological parents were at that time.
April and Angel were adjudicated as neglected children at the Superior Court for Juvenile Matters in Hartford on February 2, 1995, and committed to DCF for a period not to exceed 18 months. Expectations for the mother were subsequently set by the court (Keller, J.) at a hearing on October 3, 1995. (Petitioner's Exhibit 7). Petra R. was present in court and signed the expectation form on that date. The father, Rudy L., did not attend the hearing.
The initial commitment to DCF was subsequently extended, effective August 9, 1996, following a hearing at the court in Hartford on May 15, 1996.
Trial on the termination petitions was held in this court on March 10, 1997. Both respondents were present, and were represented by their respective attorneys throughout the proceeding. The petitioner and the minor child were also CT Page 3480 represented by their counsel during the entire contested hearing.
The following witnesses were called by the petitioner during trial:
1. Carlos Alzugaray, DCF social worker;
2. Dr. Julia Ramos Grenier, court-appointed evaluator.
DCF also submitted 13 documents into evidence as full exhibits. The respondent, Petra R., testified on her own behalf at trial, but did not offer other testimony or evidence. Neither the father, not the minor child, introduced any evidence or testimony. (Prior to the start of trial, the court, by agreement of all the parties, granted petitioner's motion for judicial notice, and a stipulation as to certain facts.)
FACTUAL FINDINGS
The court, having carefully considered all of the testimony and evidence adduced trial, makes the following findings of fact:
April and Angel were placed in state custody on November 9, 1994, after Hartford Police discovered they were living in a filthy, unheated apartment which had no food or electricity. The conditions there were described as "deplorable". (Petitioner's Exhibit 3, Page 6). (The children have lived in their present foster home continuously from that date until the present time.) Hartford Police had been to the apartment approximately one week earlier when the father assaulted the mother and threatened to kill her. (Petitioner's Exhibit 3, Page 6). Rudy L. has engaged in several acts of domestic violence against Petra R., and is currently incarcerated as the result of his conviction for assaulting her in 1994. (Testimony of Petra R., Petitioner's Exhibit 3, and Petitioner's Exhibit 6).
DCF social worker Carlos Alzugaray testified at trial that he met with Petra R. and Rudy L. at the DCF office approximately one week after April and Angel were placed in foster care. Thereafter, the father broke off contact with the agency, and both parents stopped visiting the children, for an extended period of time. Rudy L.'s whereabouts were unknown to DCF from December 14, 1994 until December 15, 1995. (Stipulation of Facts, #5). He did not visit his children from the date they were placed in November 1994 until January 16, 1996. (Stipulation of Facts, CT Page 3481 #5). Petra R. failed to visit April and Angel from the date they went into foster care until approximately 10 months later, on September 18, 1995. (Stipulation of Facts, #7).
As noted above, the mother appeared at court in Hartford on October 3, 1995, when court-approved expectations were entered. (Stipulation of Fact #4, and Petitioner's Exhibit 7). Among other things, these expectations required Petra R. to keep all appointments set by or with DCF, keep DCF and her attorney advised of her whereabouts, participate in parenting classes and drug alcohol counseling (including in-patient treatment and out-patient aftercare for substance abuse), and avoid further involvement with the criminal justice system. (Stipulation of Fact #4 and Petitioner's Exhibit 7). The form which the respondent signed clearly indicated that compliance with these expectations would increase her chances of reunification with the children. It also warned her that failure to abide by the expectations would increase the likelihood that TPR proceedings would be commenced. (Petitioner's Exhibit 7).
No court-approved expectations were ever set for Rudy L. This was due in part to the fact that the father's whereabouts were frequently unknown to the DCF social worker. (Testimony of Carlos Alzugaray). However, the social worker did meet with the father on three separate occasions since November, 1994. The court finds that the father knew that he must visit his children, and demonstrate an interest in their well-being, in order to achieve reunification.
From January 16, 1996 until September 16, 1996, Rudy L. visited April and Angel two times during a period when he could have had 36 regularly scheduled weekly visits.[2] (Petitioner's Exhibit 1 and Stipulation of Facts #6). When the father complained that the hours of his employment interfered with visitation at DCF during regular business hours, the petitioner offered him the chance to have visits at 6:30 p. m. and 7:30 p. m. (Testimony of Carlos Alzugaray). Rudy L. never took advantage of the chance for after-hour visits, and never called the worker to explain why he stopped his visitation. (Testimony of Carlos Alzugaray). During the period from December 11, 1995 until September 16, 1996, Petra R. visited the children on five occasions. There were 40 visits scheduled for her during this time frame.
Petra R. has a history of drug abuse, which has resulted in CT Page 3482 one felony conviction for possession of narcotics. She has been incarcerated several times. (See Petitioner's Exhibit 5). Since the children's commitment to DCF, the mother was in correctional custody on the following dates:
April 17, 1995-April 28, 1995;
May 1, 1995-October 4, 1995;
April 19, 1996-June 17, 1996.
(Stipulation of Facts #10).
The respondent was also in the custody of the Department Corrections when this trial was held, and she testified that her most recent incarceration began on December 2, 1996. She testified that she is enrolled in a methadone maintenance program at the prison, and that she had been on methadone for six months prior to entering custody.[3] She stated that she also attends AA and NA groups at the prison. Her anticipated release date is April 19, 1997.
Petra R. was unsuccessful in several efforts to complete drug treatment. On January 18, 1995, she was admitted to the Blue Hills Hospital but left the same day. (Stipulation of Facts #14). She thereafter entered the Reid Treatment Program in Avon on January 23, 1995, but again departed on the same day. (Stipulation of Facts #15). Petra R. was referred to the Hartford Dispensary for substance abuse treatment on March 2, 1995. She left this program after only two days participation. A study[4]
prepared by DCF for an extension of commitment hearing in this case, which was filed on March 16, 1996, indicates that the mother was a patient at Blue Hills Hospital from October 4, 1995 until November 16, 1995. No evidence was offered by any party during this trial about the nature or success of this hospitalization for her drug problem.
In addition to the opportunities for visitation and drug treatment referred to above, several other rehabilitation and reunification services were offered to the biological parents since November 1994. DCF referred Petra R. to the Klingberg Family Preservation Program on November 15, 1994, but the respondent "failed to contact the worker." (Stipulation of Facts #13). The petitioner subsequently referred the mother to both the Institute for Hispanic Families and the "Ciudate Mujer Program in CT Page 3483 March of 1995, but she failed to follow through with either referral. (Stipulation of Facts #17, #18. In December 1995, DCF referred both parents to the Alcoholics Anonymous Program and Family Violence Program offered by the Institute for Hispanic Families. Neither respondent took advantage of the opportunity. (Stipulation of Facts #20).
Julia Ramos Grenier, PhD, the court-appointed psychologist, conducted an evaluation of the mother and two children on January 17, 1996. Her report was entered into evidence in this proceeding (Petitioner's Exhibit 4) and she also testified at trial. The court finds the doctor's evaluation to be highly thorough, and it attaches great weight to the findings and conclusions presented in both her written report and oral testimony. Dr. Ramos Grenier noted in her report that:
 "It is not likely that [mother] will achieve a degree of personal rehabilitation within a reasonable period of time since she is still using a substance (alcohol) which renders her at high risk for a relapse. She also did not demonstrate to this evaluator that she has appropriate knowledge and insight into her substance abuse and emotional problems, and she did not appear to have the patience and emotional stamina to care for her children appropriately. The later opinion is based on [mother's] apparent lack of interest and/or emotional stamina to complete the evaluation, which only required a maximum of five or six hours for her." (Petitioner's Exhibit 4, Page 3).
The court notes that Dr. Ramos Grenier conducted the evaluation in January 1996 and the report is dated February 5, 1996. Petra R.'s subsequent participation in the methadone program for opiate addiction corroborates the evaluator's prediction's concerning the likelihood of relapses by the mother.
Dr. Ramos Grenier also wrote that the results of her evaluation indicated "no ongoing parent-child relationship between [mother] and either of her children." (Petitioner's Exhibit 4, Page 3). Noting that neither child displayed any indication of "memories involving their mother," the psychologist also added that "no positive feelings were evident since the children were not willing to stay in the room with their mother unless the foster parents also came into the room." (Petitioner's Exhibit 4, Page 3). Rudy L. did not participate in this psychological evaluation. CT Page 3484
ADJUDICATION WITH RESPECT TO PETRA R. (Based on facts through2/21/97)
1. Abandonment: C.G.S. § 17a-112 (b)(1) defines this non-consensual ground for termination of parental rights. It applies in those cases where the court finds by clear and convincing evidence that:
 ". . .the child has been abandoned by the parent, in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . ."
In determining whether or not abandonment has occurred, the court must focus on parental conduct. In re Michael M.29 Conn. App. 112, 614 A.2d 832 (1992). Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. In re JuvenileAppeal (Docket No. 9489). 183 Conn. 11, 14, 438 A.2d 801 (1981);In re Michael M., supra, 121.
Immediately after the children were placed in foster care on November 9, 1994, Petra R. dropped out of their lives completely for the next 10 months. She did not visit with April and Angel again until September 18, 1995. It was around that time that DCF initiated this proceeding, and that the mother signed court-approved expectations. Despite the occurrence of those two events, Petra R.'s contacts with the children remained minimal. As noted above, she visited with April and Angel on only 5 occasions between December 11, 1995 and September 16, 1996, when she could have had 40 visits. As our Appellate Court has noted in the case of In re Michael M. supra, 121, "a sporadic showing of the indicia of interest, concern, or responsibility for the welfare of a child," is not sufficient to overcome an allegation of abandonment. In this case, Petra R.'s absences form the lives of her children for the protracted periods referred to above clearly indicate her failure to maintain a reasonable degree of interest and concern for the welfare of April and Angel. Accordingly, the court finds as proven by clear and convincing evidence the allegation that Petra R. abandoned each of these children. Because the petition was amended on February 21, 1997, the court has considered adjuicatory evidence about events and circumstances which transpired through that date. The court CT Page 3485 finds, also by clear and convincing evidence, that this abandonment occurred over a period of time longer than one year.[5]
2. Failure to rehabilitate: This ground for termination of parental rights applies in cases where:
 ". . .the parents of a child who has been found by the superior court to have been neglected or uncared for have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the child, they could assume a responsible position in the life of the child. (C.G.S. § 17a-112 (b)(2).
As used in the forgoing statute, the term "personal rehabilitation" has been defined to mean the restoration of a parent to his or her former constructive and useful role as a parent. See In re Juvenile Appeal, 1 Conn. App. 463, 477,473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984); Inre Migdalia M., 6 Conn. App. 194, 203 (1986).
April and Angel have been in foster care since November 1994, and have been committed to DCF as neglected children since February 2, 1995. April will turn four in less than a month and Angel is now three years old. They have been in foster care for more than two years of their young lives.
Petra R. agreed to court-approved expectations in October 1995. These were designed to chart a course towards her reunification with the children. In signing them, she acknowledged that she would have to successfully complete drug treatment, visit her children, and avoid criminal violations in order to rehabilitate her situation to the point where April and Angel could be returned. During the more than two years which have transpired since commitment, Petra R. continued to abuse drugs, has been incarcerated four times, left three different treatment programs after only one or two days of therapy, rejected DCF referrals to at least three other appropriate reunification programs, and stopped visiting the children for extended periods of time. The mother's entry into her current methadone treatment, which she claims began six months prior to her December 1996 incarceration, indicates that she was using CT Page 3486 heroin in June 1996. This was approximately 16 months after the children were committed, and eight months after she signed the court approved expectations.
The court finds that the petitioner has established, by clear and convincing evidence, that Petra R. has failed to achieve such degree of personal rehabilitation as would encourage the belief that she could assume a responsible position in the life of either child within a reasonable time. In reaching this conclusion, the court has considered the ages and needs of April and Angel, and the extensive period of time they have already spent in foster care. Here, too, the court finds that the petitioner has established by clear and convincing evidence that this ground for termination had existed for more than one year. (See Footnote 5).
3. No ongoing parent-child relationship: The provisions of C.G.S. § 17a-112 (b)(4) set forth the circumstances under which this ground for termination may be granted. The statute defines ongoing parent-child relationship to mean "the relationship which ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of a child." This court is mindful of the fact that it is virtually impossible for parents of children in foster care to meet the day-to-day needs of such children. However, the ultimate question for the court to decide in determining an allegation of this nature is whether or not the children in question have present memories or feelings for the parent which are positive in nature. In re Juvenile Appeal(84-6), 2 Conn. App. 705, 483 A.2d 1101 (1984); In re KeziaM., 33 Conn. App. 12, 632 A.2d 1122 (1993).
In the instant case, April and Angel have been in foster care for more than two years. During the time they have been in the foster home, there were extended periods of time when Petra R. was either absent from their lives, or visited only occasionally. Dr. Ramos Grenier has opined that she saw no evidence of a relationship between the mother and the children, and that neither April nor Angel displayed any "significant memories" or "positive feelings" with respect to the respondent (Petitioner's Exhibit 4, Page 3). The court accepts this opinion, and concludes that the children's lack of feelings and memories resulted from the Petra R.'s lengthy absences and the extensive period of time the children have spent in their present foster home. Based on all of the forgoing, the court finds that the petitioner has CT Page 3487 proven by clear and convincing evidence that no parent-child relationship exists between the biological mother and these children, and that it would be detrimental to their best interests to allow Petra R. any further time to habilitate such a relationship. It is also found that DCF proved by clear and convincing evidence that this ground for termination existed for a period of time not less than one year. (See Footnote 5).
ADJUDICATION AS TO RUDY L. (Based on facts through 2/21/97).
In rendering its adjudicatory decisions with respect to the respondent father, Rudy L., the court has carefully considered all of the evidence and testimony adduced at trial, as well as all of the statutes and case law decisions referred to above in this memorandum.
1. Abandonment: Rudy L. visited with the DCF social worker approximately one week after Angel and April went into foster care in November, 1994. He knew that his children had been placed in state custody. Despite this knowledge, the father did not visit either child from November 10, 1994 until January 16, 1996, and his whereabouts were unknown to petitioner from December 14, 1994 until December 15, 1995. (Stipulation of Facts #5). Rudy L. has also stipulated that from January 16, 1996 until September 17, 1996, he visited with April and Angel only twice. During this period, the father could have exercised 36 visits. (Stipulation of Facts #6).
The father, through cross examination of the DCF social worker and during final argument by his counsel, has claimed that communication problems with his social worker and problems related to his hours of employment caused him not to visit. The court finds both of these claims to be without merit. DCF social worker Carlos Alzugaray testified credibly that he offered to set up weekly evening visits for the father at 6:30 P.M. or 7:30 p. m. This would have addressed the father's concerns about missing work and about having enough time to travel to the visits. Despite this accommodation, Rudy L. missed 34 of 36 visits with his children, and never called Mr. Alzugaray to explain his absences, or to request other arrangements. The father's failure to visit April and Angel over extended periods of time, plus his lack of contact with DCF, prove that he failed to maintain a reasonable degree of interest and concern and responsibility for the welfare of these young children. Based on the forgoing, the court finds that the petitioner has proven by clear and CT Page 3488 convincing evidence that Rudy L. abandoned his children as alleged, and that this ground for termination had existed for a period of time not less than one year. (See Footnote 5)
2. Failure to Rehabilitate: As noted above, the biological father met with DCF social worker Alzugaray approximately one week after April and Angel were placed in the foster home, and he had two subsequent contacts with the worker. Hence, he knew about the children's removal, and was also aware that remedial efforts would have to be taken by both parents before April and Angel could be returned. The father was offered visitation by DCF, and DCF also referred both parents to alcohol counseling and a family violence program at the Institute for Hispanic Families. (See Stipulation of Facts, #s 5, 6 and 20). It was proven at this trial through the testimony of Petra R. that Rudy L. had engaged in physical abuse of the mother. The respondent father did not follow through with the alcohol or domestic violence programs to which he was referred, he did not maintain contact with DCF, and he was a non-participant in the lives of these children for nearly two years. He did not, in short, do the things which he needed to do to resume a responsible position in the lives of these children, and the court sees no indication that he will be able to do so in the future within a reasonable time. Accordingly, the court finds as proven by clear and convincing evidence that Rudy L. has failed to rehabilitate as alleged in the petition, and that this ground for termination has existed for not less than one year. (See Footnote 5).
3. No ongoing parent-child relationship: During the period of time which elapsed from November 10, 1994 until September 16, 1996, Rudy L. visited his young daughter and son a total of two times. He did not attend Dr. Ramos Grenier's psychological evaluation, and hence there is no professional evaluation of his relationship with either April or Angel. The court notes, however, that the psychologist observed no parent-child relationship between the children and Petra R, who had several more contacts with them than the father did. The extreme paucity of visits or contacts between Rudy L. and the children support a finding by clear and convincing evidence that no ongoing parent-child relationship exists, and that it would be adverse to the best interests of April and Angel to allow the father further time to habilitate such a relationship. This ground for termination has existed for longer than one year. (See Footnote 5). CT Page 3489
DISPOSITION AS TO BOTH RESPONDENTS (Based on facts throughthe date of trial)
Having found that grounds for termination alleged against each respondent were proven during the adjudicatory phase of this proceeding, the court now considers the issue of disposition. The standard to be applied in this phase of the trial is whether or not there is clear and convincing evidence that it is in the best interests of the children to terminate parental rights.
At the time this case was tried, both parents were in the custody of the Department of Corrections. Petra R. was incarcerated on a drug-related charge, and Rudy L. was serving a sentence which resulted from his conviction for a 1994 assault on the mother. Both parents have rebuffed DCF's offers of appropriate rehabilitative services and visitation. The court has found that neither parent will assume a responsible position in the lives of these children within a reasonable time. April is now nearly four and Angel is three. They have each been in foster care for more than two and a quarter years.
April and Angel have resided continuously in the same foster home since their removal in November 1994. Carlos Alzugaray, the DCF social worker, indicated in his social study that both children "are doing well in foster care." (Petitioner's Exhibit 3, Page 11). DCF considers this foster home to be a potential adoptive placement for the children. Dr. Ramos Grenier wrote in her February 1996 report that April and Angel view the foster parents as their "psychological parents." (Petitioner's Exhibit 4, Page 2). The doctor also opined that it is in the best interests of these children that they remain with their current foster parents.
Given the ages of each child, the length of time each has already languished in the "limbo" of foster care, and the lack of involvement and rehabilitation by the biological parents, it is clear that these children need the security and stability of placement in a permanent home as soon as possible.
Before this court may render judgment in this case, it must make the following written findings mandated by C.G.S. §17a-112 (d):
1. Services offered: The court finds, based upon clear and convincing evidence, that DCF and other agencies made timely and CT Page 3490 appropriate services available to each of the respondents. Petra R. was offered substance abuse treatment at Blue Hills Hospital, Reid Treatment Center and the Hartford Dispensary. She was also referred for services at the Klingberg Family Preservation Program, the Institute for Hispanic Families, and the Ciudate Mujer Program. DCF also offered the mother visitation, including visitation at Niantic when the petitioner learned that the respondent was incarcerated there. The father, Rudy L., was referred by DCF to the Institute for Hispanic Families for alcohol and domestic violence counseling, and was offered weekly visitation, including an offer for evening visitation due to his employment schedule.
2. Reasonable efforts: The court finds, also based upon clear and convincing evidence, that through offers of visitation, treatment and other services, the petitioner made reasonable efforts to reunite April and Angel with their biological parents.
3. Court orders: No court orders were entered in this matter. Reasonable and appropriate court-approved expectations were established for the mother. The father did not attend the court hearing at which those expectations were set, and he failed to maintain contact with the DCF for a protracted period of time. It is clear to the court, however, that both biological parents knew of the circumstances which led to the children's removal, and that they knew the types of changes which they would have to affect in order to be reunited with April and Angel.
4. Feelings and emotional ties of the children: The children have bonded with the foster parents with whom they have lived since November, 1994. April and Angel regard their foster parents as their psychological parents. The court has found that neither child has positive memories or feelings for the biological parents.
5. Efforts to adjust: The court finds that neither of the biological parents has made significant efforts to adjust their circumstances, conduct or conditions so as to make it in the best interests of the children to return them to their parents in the foreseeable future. In making this finding, the court has considered, inter alia, the contacts and communications which Petra R. and Rudy L. have had with the children and DCF since the date the children went into the petitioner's custody.
6. Ages of the children: April was born on April 1, 1993. She CT Page 3491 will turn four on April 1, 1997. Angel's date of birth is March 16, 1997. He is three years old.
7. Impediments to parent-child relationship: The court finds that no unreasonable act of any individual or agency, and no adverse economic or other circumstance, prevented either respondent from maintaining a meaningful relationship with their children. Indeed, the petitioner took commendable affirmative steps to encourage the relationship, such as accommodating the father's request for evening visits, and initiating visitation with the mother at the prison when DCF learned that Petra R. was in custody.
JUDGMENT AND ORDERS
Having considered the seven factors enumerated above, and having found as proven the grounds for termination of parental rights alleged against each respondent, the court further finds as proven by clear and convincing evidence that it is in the best interests of April L. and Angel L. that the parental rights of each respondent be terminated in order that these children may be freed for adoption.
Accordingly, it is hereby ORDERED that the parental rights of Petra R. and Rudy L. with respect to April L. and Angel L. be, and hereby are, terminated. It is further ordered that the Commissioner of the Department of Children and Families be appointed the statutory parent of these children, for the purpose of securing an adoptive home or other appropriate permanent placement for them. Said Commissioner shall file with this court, no later than 90 days following the date of this judgment, a written report on the progress achieved towards such permanent placement. If adoption has not been finalized by June 1, 1998, then said Commissioner is further ordered to file a Motion for Review of Plan for terminated child, which shall be heard by the court no later than September 1, 1998.
Dated at Middletown, Connecticut this 18th day of March, 1997.
BY THE COURT DYER, J.