[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 6, 1997 the mother entered an Alford plea to a neglect petition filed by the Department of Children and Families (DCF) involving her four children: Randy and Bruce, born May 9, 1984, John, born March 18, 1989 and Monique, born June 1, 1992. C.G.S § 46b-129. The children were being denied proper care and attention, physically, educationally or morally and were permitted to live under conditions, circumstances or association injurious to their well-being. § 46b-120 (8). The issue at the trial was disposition.
Attorneys had been appointed for the mother and the children. A guardian ad litem was appointed for the children. A child psychologist, the guardian ad litem and the DCF worker testified for the petitioner; mother testified, as well as a previous parent aide. DCF and the guardian ad litem favored commitment. The mother objected. Only Bruce provided direction to his lawyer: removal. CT Page 12938
Upon preponderance of the evidence at the last hearing date, the court finds in the best interest of the children that they be committed to the Commission of Children and Families for the statutory period.
 I
The first referral to DCF on this family occurred in September 1987. Over the succeeding years there have been reports of inappropriate discipline and personal misbehavior in presence of children. The home has been unkept with fire hazards; no clean clothes and no food for the children. The home has been without heat and hot water. Bruce in August 1997 reported the home needed fumigation.
In July 1995 DFC received referral from the Child Guidance Clinic expressing concern over the lack of supervision for the twins. Ninety six hour DCF holds occurred in 1995 and 1996 when the children were removed from the home. The twins stayed with a family friend B. from February 1996 under a voluntary placement; in June 1996 the mother refused return of the twins. Boys village in August 1996 saw no improvement in mother's parental ability after nine months of assistance and recommended placement of all children.
In September 1997, the school reported the twins were behavioral problems who neither finish or follow classroom rules. Whatever the mother's efforts with school authorities, the children's school problems remain. Ex S-6, S-7, S-8, S-9.
Although the mother in 1989 and 1995 has conceded she cannot control her children, she attributes all family problems to the time `however short' they spent in foster care. The mother suggestion for this dysfunctional, or nonfunctioning family, is YMCA membership for the boys and a home worker.
 II
Dr. Barbara Berkowitz, a licensed and experienced child psychologist evaluated the family as of July 11, 1997. Ex. S-1. Based largely on the family history relayed by the mother, Dr. Berkowitz initially recommended that Bruce reside with the family friend B. but in fact, this concerned lady is infirm and legally blind. The other three children would remained home for family CT Page 12939 therapy work.
Upon review of additional material, Dr. Berkowitz filed an Addendum dated August 15, 1997 which recommended out of home placement for all four children.
"Given the historical information provided in this post evaluation packet, this psychologist is duly impressed with the chronicity of all of the pathological dynamics in the . . . family There has been virtually no change in the adequacy of . . . parenting commitment or capacity in almost a decade, despite the provision of significant levels of mental health treatment. Her attitudes and behaviors remain much the same as those cited in earlier reports, and she continues to externalize the responsibility for the children's problems onto them, rather than perceiving her own difficulties as having something to do with their actions. She remains unwilling to engage in the forms of treatment necessary for her own changes, and the evaluator is further convinced that she suffers from a serious and difficult-to-treat personality disorder. Hence, the prognosis for her to make significant changes is poor-to-guarded, at best, especially since she expressed no interest in or motivation for individual treatment. Her parenting capabilities and adequacy are, therefore, highly unlikely to change in the foreseeable future." Ex. S-2, page 2. The testimony of professionals is given great weight. In re Michael M., 29 Conn. App. 112 (1992).
While the mother may well love her children, she fails to meet the minimum attributes of parenthood. In re Juvenile Appeal(Docket No. 9489) 183 Conn. 11, 15 (1981).
Dr. Berkcowitz recommended that Randy and Bruce should be in separate residential setting or highly specialized therapeutic foster homes and that Jake and Monique should be in foster care. All four children have needs which should be addressed by DCF. Hopefully the mother will be motivated by this decision to engage in her own therapeutic program leading to reunification.
The court finds that reasonable efforts to prevent or eliminate the need for removal of said children were made by the state over the past ten years.
 III
Accordingly, the four children are committed to the CT Page 12940 Commission of Children and Families for the statutory period, effective December 26, 1997. The court approves the expectations submitted by DCF.
Treatment plan/administrative revenues should be filed commencing on or about June 30, 1997. A status report should be filed with the court on or about March 31, 1997.
Samuel S. Goldstein Judge Trial Referee