MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Irma R. and Miguel G. to Jesus David R., now almost ten years old. This boy was first placed in foster care by the Department of Children and Families (hereafter '"DCF") on June 21, 1993. His mother voluntarily placed him with DCF, after the child had been psychiatrically hospitalized in May of 1993 and the professionals did not recommend his return home. He was adjudicated neglected on December 22, 1993. On March 18, 1997, a termination petition was filed with the court.
The court finds that the mother was personally served with the petition for termination and has appeared through court-appointed counsel. Service on Miguel G. was made by certified mail and publication in El Vocero, a newspaper with general circulation in the San Juan, Puerto Rico area, where the biological father had returned. The court finds that proper notice has been given in accordance with the law. Due to the CT Page 2544 father's lack of interest, no counsel was appointed for him, as to do so would serve no purpose. The court has jurisdiction in this matter and there is no pending action affecting the custody of Jesus David R. in any other court.
The allegations against Irma are that the child was previously adjudicated neglected and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child. Connecticut General Statutes §17a-112 (c)(3)(B). As to the father, DCF alleges that he has abandoned the child and that there is no ongoing parent child relationship. Connecticut General Statutes § 17a-112 (c)(3)(A) and (D). The remaining allegations were withdrawn.
FACTS
The court has heard a day of testimony from the DCF social workers, therapists for Jesus, other involved professionals, as well as his foster parents. In addition, there were five exhibits introduced into evidence. The mother attended the trial and, through her counsel, contested the petition. The court makes the following findings and the reasonable inferences supported by those findings from the evidence presented at trial.
Irma has given birth to eight children with five different fathers. Only four remain in her care and the rest are in the care of others, including relatives in Puerto Rico. Jesus David R. first came to the attention of DCF because of a referral from Puerto Rico to check on the family. He was also identified as a special needs child in the Head Start program. In May of 1993, when he began the first of three psychiatric hospitalizations, Jesus David already exhibited the behaviors that have caused him to require a specialized foster care placement. He was out of control, having tantrums during which he hurt himself and others, and engaged in self-abusive behavior. It was suspected that he suffered physical and verbal abuse by his step father.
Despite the household's Problems. DCF made many efforts to help Irma reunify with her son. She received counseling with Jesus David, assistance from the Hispanic Clinic, as well as the New Haven Family Alliance, which provided home services to the family. She received help from the 4 C's, the Milford Mental Health Clinic, Connecticut Mental Health Clinic and from Catholic CT Page 2545 Family Services. She was discharged from most programs for non-compliance. While she argues that her other child care responsibilities made attendance difficult, she had in-home services that were available to assist her and she did not utilize them. She only sporadically attended Jesus David's therapy sessions.
Irma also had regular weekly visits with Jesus David. These, too, became sporadic over time. The DCF case worker testified that Irma was ambivalent about reunification, stating at times that she was unable to control the child and was unwilling to risk her present marriage by having this child returned home to her. At other times, she professed her love for him and her wish that he could be returned to her. Unfortunately, she did not change her conduct to make that possible.
What Jesus David himself has reported in years of therapy and to his foster parents is much more disturbing. When hospitalized, he had been diagnosed as an Attention Deficit Hyperactivity Disorder (ADHD) child and placed on medication. Jesus David reported through the years that his mother hit him, at one time she threatened to kill him, the other children and herself with a knife. And she regularly scapegoated him, telling him that he was bad, had the devil in him and was possessed. As testified by Ms. Caicedo, Jesus David's therapist since 1992, the child internalized this treatment and was very vulnerable.
When the therapist first began to treat Jesus David, he could not control his behavior, could not sit still, was very aggressive towards her, Irma, and the other children she brought with her and was threatening to hurt himself. She stated that his behavior began over time to improve, but that his continuing contact with his mother was often the catalyst for regression. She stated sadly that his mother was never able, in the ensuing years, to understand her own role in Jesus David's behavior. Even with counseling, she continued to blame this child, stating that he was bad and that no one could control him. She never accepted any responsibility for his behavior nor attempted any changes to be able to deal with Jesus David. She also never took any steps to understand and learn about his specialized needs as an ADHD child.
For years, Jesus's father had not been involved in his son's life. Nonetheless, in March of 1995, he contacted DCF and requested regular visitation. He had visitation with his son four CT Page 2546 times in one month and then returned to New Jersey. Since that time, he has not contacted DCF to inquire about his son, sent cards or gifts or evidenced any interest in the child. He has no relationship with his son and is now living in Puerto Rico.
At the same time when his father was apparently returning to his life, DCF accelerated its attempts to reunify Jesus David with his mother. He was permitted overnight and weekend visits with his mother and siblings. His therapist testified that the child's acting out increased, so that a second psychiatric hospitalization occurred. His old behaviors returned with a vengeance and he recommended hospitalization because of her fears for his safety. Upon Jesus David's release from treatment and at the recommendation of the professionals, visitation with his mother was reduced to four times a year.
After his second hospitalization, Jesus David was placed in a foster home which was unable to control him and he was returned to the hospital after one day. His next placement, however, in a specialized treatment foster home, provided Jesus David with the opportunity and support he needed to turn his life around. His present foster parents testified to the changes they made in their lives to provide Jesus David with the constant daily structure and discipline he requires to function. And function he does. He attends school where his foster mother works at lunch to assist him during this unstructured period of the school day. He is active in sports, soccer and running and has won trophies for his activities. He is proud of his achievements and has begun to be able to understand what has happened in his life. He has been able, with only occasional lapses, to refrain from his earlier behavior.
It was not always so, since after about four months in this foster placement, Jesus David, while in the car with his foster mother, wrenched the wheel from her, attempted to steer the car and talked about suicide. He was again hospitalized for the third and hopefully last time in April of 1996. Upon his discharge, he could not understand initially that his foster parents were not only willing to take him back, but continued to exhibit their love for him. He had not yet begun to trust them fully. As his foster mother testified, this was the turning point for him and since that time, Jesus David has made tremendous strides.
His therapist. too, testified to his resilience and the special work and tremendous effort that his foster parents have CT Page 2547 exerted on his behalf. She testified to the continued connection he has with his mother. She stated that during contact with his mother, he is confronted with the ultimate anguish; he cares for her and at the same time is afraid of her, because of the multiple traumas he experienced in her care. He cannot understand that his other siblings remain with her and he cannot. On the other hand, he remains very concerned for their safety. Because of the overwhelming feelings meeting with his mother engender in Jesus David, she recommended that visitation cease in August of 1997 and Jesus David has not seen his mother since that time. While he retains his bond with his mother, he is anxious to be adopted by his foster family, as he is an accepted and loved member of this new family.
ADJUDICATION
The court finds by clear and convincing evidence the two grounds alleged against Miguel G. have been proven by DCF. The first of those grounds, abandonment, focuses on the parent's conduct. In re Michael M., 29 Conn. App. 112, 614 A.2d 832
(1992); In re Rayna M., 13 Conn. App. 23, 36, 534 A.2d 897
(1987); In re Kezia M., 33 Conn. App. 12, 632 A.2d 1122 (1993). "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal (Docket No. 9489).183 Conn. 11, 14, 438 A.2d 801 (1981). His biological father has not pursued visitation with him, does not display love, affection, or concern for this child and has abandoned him completely. He also has no ongoing relationship with Jesus David. "The question is whether they [the facts] substantiate a finding by clear and convincing evidence that no relationship ever existed between the parent and child, or that the relationship has terminated, without any future hope for its establishment or reestablishment." In re Migdalia M., 6 Conn. App. 194, 211,504 A.2d 532 (1986); In re Juvenile Appeal (84-3), 1 Conn. App. 463,473 A.2d 795, cert. denied, 193 CONN. 802, 474 A.2d 1259 (1984);In re Juvenile Appeal (Anonymous), 177 Conn. 648, 670-671,420 A.2d 875 (1979). That question is clearly answered by the clear and convincing evidence before the court. The relationship between Jesus David and his biological father has ended because of the respondent's behavior and he has done nothing to re-establish it. These grounds have existed for more than one year prior to the date of the filing of the termination petition. CT Page 2548
The court also concludes, based on clear and convincing evidence, that DCF has proven its case against Irma R. She has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of her child, she could assume a responsible position in the life of this child. Connecticut General Statutes § 17a-112 (c)(3)(B). As of the date of the filing of the termination petition on March 18, 1997, Irma had not begun the necessary counseling nor sought to make the changes required of her to be able to regularly visit with Jesus David, let alone be rehabilitated as a parent. Years have passed since Jesus David was adjudicated neglected on December 22, 1993. He has been in foster care for more than four years. He simply cannot wait any longer for the rehabilitation of his mother, as he has immediate and strong needs for permanency. He deserves the right to continue the productive life steps he has begun to take. The court concludes that this ground, too, had existed for more than one year prior to the filing of the petition.
REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112 (e):
1) Appropriate and timely services were offered by the Department of Children and Families, including counseling, visitation, transportation assistance, and an in-home parent aide. While Irma never refused to take part in any services, she did not do so on any consistent basis. She never gained any insight into the nature of her son's serious difficulties and her own contributions to them. No services were offered to Miguel G., except visitation services, as he was only briefly involved with his son.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. The efforts that were made to assist Irma had devastating effects on Jesus David while Irma remained ambivalent about them. Visitation was provided to Miguel G., when requested.
3) The Department entered into reasonable and realistic court expectations in order to reunify the family. Irma was unable to meet those expectations. None were set for the father. CT Page 2549
4) The child has strong emotional ties with the foster family, who have provided the physical, emotional and educational support this child needs. Jesus David still acknowledges a tie to his mother, even though he fears her and knows she cannot take care of him. He has no ties to his father.
5) Finding regarding the age of the child. Jesus David will be ten years old in April, 1998.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (a) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. Neither of the biological parents have done anything to adjust their circumstances to make it in the best interests of the child to be returned to them.
7) Finding regarding the prevention of the parents from having a meaningful relationship etc. DCF has taken many steps to encourage the mother to have a meaningful relationship with her son and to rehabilitate herself, which she has failed to accomplish. As to the biological father, Miguel G., DCF has taken all reasonable steps.
DISPOSITION
Jesus David will be ten years old soon. He exhibits the effect of the neglect and abuse by his mother. His improvement since his second foster home placement is compelling evidence of his innate resilience and his resolve to be part of a family. As those treating him testified, his recovery is ongoing and he requires both permanency and a nurturing home, one he cannot have with his biological mother. Based upon the foregoing findings, the court determines that it is in his best interests that their rights to him be terminated. Accordingly, a termination of the parental rights of Irma R. and Miguel G. is ordered. It is further ordered that the Commissioner of the Department of Children and Families be appointed the statutory parent for Jesus David for the purpose of securing an adoptive family and a CT Page 2550 permanent placement for him. If his present foster family continues to be willing to adopt him, the court directs that they receive first consideration. The Commissioner shall file with this court no later than ninety days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
Barbara Quinn Judge Child Protection Session