MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Wendy P. and Justino A., to a four year old child, Michael P. Michael was the product of statutory rape[2]
by the biological father of the mother when she was thirteen years of age. Despite the mother's sometimes valiant efforts to care for the child while she herself was committed to the Department of Children and Families, a neglect petition was filed on November 18, 1994. Michael was adjudicated neglected on March 22, 1995 and committed to the care of the Department. He has been in foster care since November of 1994.
The court finds that the mother and father have appeared and have court appointed attorneys. Mother has had a guardian ad litem appointed for her as she is still a minor. The court has jurisdiction in this matter; there is no pending action affecting CT Page 8894 the custody of Michael in any other court and reasonable efforts have been made to reunite him with his parents.
The court having read the verified petitions, the social studies, and the various documents entered into evidence, and having heard the testimony of various witnesses and evaluators, makes the following factual findings:
The mother does not contest the termination of her rights. She consented to the termination, after review of the matter with her counsel, and her guardian ad litem and filed a written consent with the court. The court finds her consent to have been voluntarily and knowingly made with the advice and assistance of competent counsel and with a full understanding of the consequences of her act.
The petition had been amended with respect to the father to allege abandonment and failure to rehabilitate but retains the original adjudicatory date of April 15, 1997.
With Respect to the Child:
Michael has some specialized needs. Two years ago, he exhibited signs of delays in cognitive, speech and language skills and some lower intellectual functioning. A PEDAL evaluation was performed at the Connecticut Children's Medical Center, and the psychologist believes that Michael's early history of poor caretaking contributed to these delays. Michael remains in the foster home where he was placed in June of 1995 where he has adjusted well to the home, but continues to have problems listening and following directions. The foster family is working with him around his speech and language delays. His behavior has been hard to control and challenging, but nonetheless his foster family is eager to adopt him.
With Respect to the Child's Father: (Justino A.)
Approximately two months after Michael's birth, Justino A. was incarcerated after conviction of sexual assault in the first degree, to which he pled guilty under the Alford Doctrine. At the time of his assault on the biological mother, he was thirty-four years old and the husband of one of mother's cousins. He was also the father of four children, issue of his marriage. For his crime, the court imposed a sentence of ten years, execution suspended after five years with a term of probation. He was CT Page 8895 released from prison on July 3, 1997.
Justino A. has never seen Michael nor had any contact with him. Due to his incarceration and the facts surrounding the child's conception, no Department expectations were prepared for him. Nonetheless, Justino A. made several requests of the Department for visitation while incarcerated, which were denied due to the mother's objections pending her reunification efforts with Michael. Upon receipt of the denial, he did not request an administrative hearing. The Department did provide him with three administrative case reviews at the Brooklyn Correctional Center, after establishment of his paternity by testing. On June 1, 1997, he sent a letter to his son in care of the Department. He has otherwise never sent cards, gifts or money to his son.
His prison counselor, Jennifer Schena, testified that Justino A. never requested any advice as to what steps he could take to make contact with this child. She knows that he made no calls or inquires as to the child's well being or whereabouts. While incarcerated, he did complete five programs relating to his personal rehabilitation (Respondent's Exhibits B (1) through B (5)). When questioned about drug and alcohol programs he has sporadically attended, he was vague and denied any problems with drug or alcohol use.
Since his release, the father has found work as a painter and has complied with the conditions of his release. His probation officer testified that he would have concerns if Michael were released to the care of his biological father, who has not yet established a track record in the community.
The Department case worker testified about her contacts with the father. She provided him information about the procedures open to him to establish contact with Michael, including writing, speaking with Casey Family Services about Michael's circumstances and taking parenting courses and individualized counseling. With the exception of requesting administrative case reviews, Justino A. did not avail himself of the options that existed. He did not request transfer to another correctional facility to take a parenting course which was unavailable to him at Brooklyn. He also admitted to the case worker that he had been arrested on two occasions in the past for domestic violence against his spouse.
Justino A. testified at some length about himself and the steps he had taken to rehabilitate himself. While incarcerated he CT Page 8896 did a lot of soul searching and "needed to take care of himself first." When Michael was involved with the mother, Justino A. considered consenting to termination, explaining that he did not really understand that upon termination he would not be entitled to contact with Michael. He did admit he might not be able to parent Michael at this time, but that he should be given more time. His plan for Michael was vague and included other collateral relatives providing for the child's care, all relatives the child does not know. He believes that it is important to maintain contact with his "blood line".
When asked whether Michael was ready to have him as a parent in view of the years the child had spent in foster care and the absence of any contact of knowledge of his biological father, he was unable to answer this crucial question. What this child's needs might be or what his life had been since his placement in foster care when he was a year and a half old were not concerns that Justino A. could fathom. He admitted he did not know much about Michael's specialized needs.
The court has previously held that "the incarceration of a parent does not alone constitute abandonment". In re JuvenileAppeal (Docket No. 10155), 187 Conn. 431, 443, 446 A.2d 808
(1982); In re Juvenile Appeal (84-6) 2 Conn. App. 705, 711,483 A.2d 1101 (1984) cert. denied, 195 Conn. 801, 487 A.2d 564
(1985). "The restrictions on movement that are inherent to incarceration, however, do not excuse a failure to make use of available, albeit limited, resources for communication with one's children." In re Juvenile Appeal (Docket No. 10155), supra In ReShannon S., 41 Conn. Sup. 145, 153, 562 A.2d 79 (1989).
However difficult, some of the obligations of parenthood can be pursued, even from prison. "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; . . ." In re Juvenile Appeal (Docket 9489), 183 Conn. 11,15, 438 A.2d 801 (1981) quoting In re Adoption of Webb, 14 Wash. App. 651,657, 544 P.2d 130 (1975). This court finds by clear and convincing evidence that the father took no concerted action to establish a relationship with Michael; he did not communicate with him, he did not provide guidance, he did not express concern. The efforts which did occur were late and ineffectual. While he remains proud of the many courses he has completed while incarcerated, such courses concern his personal rehabilitation CT Page 8897 only. They have not provided him with any insight about the consequences of his failure to communicate or relate to his son. Michael has no relationship with him, nor he with Michael. The mere fact the Michael shares his biological father's "blood line" is not an adequate bond upon which to predicate a caring and nurturing relationship, which this child, as indeed do all children, needs. Justino A.'s conduct in causing the conception of this child exhibits his basic lack of understanding of adult human relationships and the vulnerability of adolescent children. The court holds that Justina A. has, by his conduct, effectively abandoned the child within the contemplation of Connecticut General Statutes § 17a-112(c)(3)(A).
Further, this child has been adjudicated neglected and the father has failed to achieve such a degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. Connecticut General Statutes § 17a-112(c)(3)(B). Rehabilitation, as used in the statute, refers to the restoration of an individual to a constructive and useful role as a parent.In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986). The ultimate question is whether the parent at the time of the filing of the termination petition is more able to resume the responsibilities of parenting than he was at the time of the commitment. In re Michael M., 29 Conn. App. 112, 126,614 A.2d 832 (1992). The court must also consider whether the age and needs of the child support the allowance of additional time for the parent to rehabilitate. In re Luis C., 210 Conn. 157, 167-68,554 A.2d 722 (1989). In this case, Justino A. has made only minimal efforts to rehabilitate himself as a parent. His lack of insight into Michael's needs and requirements make future rehabilitation unlikely at best. From the child's perspective, it is too little and too late. Michael's years with his foster parents and specialized care needs do not support keeping him in a parenting limbo any longer.
Adjudication
With regard to the statutory grounds for termination of parental rights of the father, the court finds by clear and convincing evidence that he has failed to support this child or manifest any reasonable parental interest, whatsoever, and has abandoned him as that term is defined in Connecticut General Statutes § 17a-112(c)(3)(A). Further, this child has been CT Page 8898 adjudicated neglected and the father has failed to achieve such a degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. Connecticut General Statutes § 17a-112(c)(3)(B).
The court makes the following factual findings required by § 17a-112(e):
1) Appropriate and timely services were provided by the Department of Children and Families, including counseling, transportation assistance, and visitation coordination. In the father's case, such direct services have included administrative case reviews.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. The court finds in this proceeding that the father, due to his incarceration and other circumstances relating to the child, was unable to have visitation and did not avail himself of such opportunities as he could have to maintain reasonable contact with the child.
3) The Department, with the approval of the Court, set reasonable and realistic expectations and service agreements in order to reunify the family. None were set for the biological father due to his incarceration and the nature of his crime.
4) The child has strong emotional ties with the foster family who have provided the physical, emotional and educational support this child needs. The child has no emotional ties to the biological father.
5) Finding regarding the age of the child. Michael is four years and four months old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions etc. The father has not made realistic and sustained efforts to conform his conduct to acceptable parental standards. While the father has been incarcerated he has, to his credit, completed various programs offered for his personal rehabilitation. Those efforts did not relate to Michael or his needs. His failure to establish a relationship with his child has displaced him as a possible CT Page 8899 parental figure. Giving him additional time would not likely bring his performance, as a parent, within acceptable standards sufficient to make it in the best interests of the child to be reunited with his biological father.
7) Finding regarding the prevention of the parents from having a meaningful relationship, etc. The criminal behavior of the father which resulted in the conception of this child also resulted in his arrest and period of incarceration. The Department has attempted to encourage appropriate contact under such circumstances. No unreasonable conduct is noted.
DISPOSITION
The court finds that these grounds and circumstances have existed over an extended period of time which is greater than one year prior to the filing of the termination petition. The court finds, based upon the testimony and evidence presented, that it is in Michael's best interest to terminate the parental rights of Wendy R. and Justino A. This finding is made after considering this child's specialized needs, the length of time he has been separated from his family of origin, his need for a secure and permanent environment, the relationship that he has with his foster parents, and the totality of circumstances surrounding his short but turbulent life.
Based upon the foregoing findings, the court determines that it is in Michael's best interest for a termination of parental rights to enter with respect to the biological parents, Wendy P. and Justino A. and it is hereby, ORDERED that the parental rights of Wendy P. and Justino A. are terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. If the foster parents continue to be willing to adopt Michael, it is the court's direction that they receive first consideration. A permanency plan for Michael shall be submitted within 90 days. A review plan for him shall be filed in accordance with state and federal law.
Barbara M. Quinn, Judge Child Protection Session