MEMORANDUM OF DECISION
This case involves neglect petitions for Tamika and Cheree A. and petitions for the termination of the parental rights of Joanne A. and Christopher B. to all three of their daughters, Tamika, Cheree and Lavonne. The children were first placed in foster care by the Department of Children and Families (hereafter "DCF") on August 8, 1994, when both of their parents were incarcerated and they were homeless. The mother, Joanne, was drug-addicted, both parents were estranged from their families, and no other relatives were available to care for them. Upon the father's release from incarceration, the two oldest children were returned to his care. Lavonne, then eight months old, required regular medical attention. As her father had previously been CT Page 3990 unable to meet her medical needs, Lavonne remained in foster care. She was adjudicated neglected on October 5, 1994 and committed to the care and custody of DCF. Tamika and Cheree were returned to foster care on September 28, 1995, after they had been left alone by their father. Both girls were adjudicated neglected on November 22, 1995. When their commitment expired, new neglect petitions were filed on May 23, 1997 and an order of temporary custody granted. On July 23, 1997, termination petitions as to all three children were filed with the court. All pending petitions were consolidated for trial.
The court finds that the mother was personally served with the neglect petitions concerning Tamika and Cheree and the termination petitions for all three children. She has appeared through court-appointed counsel. Service on Christopher B. was made by publication in The Richmond Times, a newspaper with general circulation in the Richmond, Virginia area, where the biological father had moved to live with relatives. The court finds, from the evidence, that proper notice has been given in accordance with the law. Due to the father's lack of interest, no counsel was appointed for him, as to do so would serve no purpose. The court has jurisdiction in these matters and there is no pending action affecting custody of Tamika, Cheree and Lavonne in any other court.
The neglect petitions concerning Tamika and Cheree allege that both parents have abandoned the children and that they are being denied proper care and attention, physically, educationally or morally. Connecticut General Statutes § 46b-120. Specifically, the petitions allege that both parents have abandoned their children and that their mother has a history of drug addiction. The termination of parental rights petitions for all three children contain three allegations against Joanne. First, DCF claims that she has abandoned the children. Second, the claim is that the children were previously adjudicated neglected and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the life of the children. The third claim is that Joanne has no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the children and to allow further time for the establishment or reestablishment of such parent child relationship would be CT Page 3991 detrimental to the best interest of the children. Connecticut General Statutes § 17a-112 (c)(3)(A), (B), and (D). The same grounds are alleged against the father, Christopher B. At trial, DCF did not proceed against either parent for their failure to have an ongoing relationship with the children. DCF also did not proceed against the father concerning his failure to rehabilitate.
FACTS
The court has heard testimony from the DCF social worker, the court-appointed clinical psychologist, Dr. Bruce Freedman, as well as from Joanne A. In addition, there were twelve exhibits introduced into evidence. The mother attended the trial and, through her counsel, vigorously contested the petition. The father failed to appear. The court makes the following findings and the reasonable inferences supported by those findings from the evidence presented at trial.
Joanne A. and Christopher B. have had a ten year relationship, which has ended. Each parent has had a history of drug addiction and has been involved with the criminal justice system. There have been multiple incarcerations.
Joanne's drug use has heavily impacted her children. All three children were born prematurely, due to her continued drug use during her pregnancies. Of the three, Lavonne has been most heavily medically impaired by uterine drug exposure. She was resuscitated at birth and found to have bronchopulmonary dysplasia.[2] She was diagnosed as a failure-to-thrive child, is visually impaired and developmentally delayed in all areas. After her birth on December 21, 1993, she remained hospitalized for a period of three months. Her conditions required special medical care and ongoing medication. Due to her mother's incarceration, her father attempted to care for her and her two older sisters. In May of 1994, when she was five months old, she was re-admitted to the hospital near death. By August of 1994, when she was eight months old, it was apparent that her father was not able to administer the necessary medications regularly. Soon after, she was placed in foster care where she has remained. During her entire life, she was never in the daily care of her mother.
After Tamika's and Cheree's initial placement in foster care along with their younger sister in August of 1994, they were CT Page 3992 returned to their father. By the fall of 1995, they were again removed as he was not providing them proper care. He left them alone and the authorities intervened to protect them. They have remained in foster care since that time, on September 28, 1995.
In the years since the placement of the children, their mother has failed to complete any drug abuse treatment programs. As Dr. Freedman found, she is able to remain drug free while in a structured setting, but returns to drug use within a short period of time after her release. She was incarcerated during the trial and due to be released within a few days after its conclusion. She has been able to remain drug-free during this last incarceration. Dr. Freedman further found that she had never led an independent adult life.
Since the removal of her children, Joanne A. has visited them only sporadically. At the time of the last evaluation with Dr. Freedman on October 27, 1997, she had not seen her children in over a year. She had failed to keep two previous evaluation appointments. During that time, she had not called to inquire about her children and their progress, nor sent cards or made any financial arrangements to support them. She did admit during her testimony that she has been drug-addicted. She pledged to reform in the future, but she has never previously demonstrated sobriety for any period of time when not incarcerated.
During the time of DCF involvement with her family, Joanne has been offered many services for reunification; inpatient and outpatient drug treatment, a parent aide, individual counseling, visitation and transportation to visitation. She has only minimally complied with service agreements and court expectations set for her. She has never with any seriousness attended or manage to complete any drug treatment program.
Since 1995, the father, Christopher B., has had only minimal contact with his daughters. He had a visit in February of 1997, his first in over a year, and has not contacted DCF about them again. He, like Joanne, has not complied with any expectations, has not called regularly to inquire about the girls, sent cards, gifts or made any financial arrangements on their behalf. The DCF caseworker testified that by May 23, 1997, she did not know the whereabouts of either parent, although she subsequently learned that Joanne was incarcerated.
NEGLECT ADJUDICATION
CT Page 3993
By May 23, 1997, by a preponderance of the evidence, indeed by clear and convincing evidence, the court finds that Tamika and Cheree had been abandoned by both parents and neither was able to provide the emotional or physical care and attention they required. Accordingly, the court finds that each was a neglected child pursuant to Connecticut General Statutes § 46b-120. The youngest child, Lavonne, has previously been adjudicated neglected.
TERMINATION ADJUDICATION
The court finds, by clear and convincing evidence, that both grounds pursued at trial against Joanne A. have been proven. The first ground, abandonment, also alleged against Christopher B., has been proven by the clear and convincing evidence against him. Abandonment focuses on the parent's conduct. In re Michael M.,29 Conn. App. 112, 614 A.2d 832 (1992); In re Rayna M.,13 Conn. App. 23, 36, 534 A.2d 897 (1987); In re Kezia M.,33 Conn. App. 12, 632 A.2d 1122 (1993). "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." In re JuvenileAppeal (Docket No. 9489), 183 Conn. 11, 14, 438 A.2d 801 (1981). For Joanne, the evidence has shown that she has not pursued visitation with her daughters, does not display love, affection, or concern reliably for her children and has abandoned them. And if this is sadly the case for Joanne, it is all the more the case for Christopher B., who has given up on having any relationship with them. For both parents, this ground has existed for more than a year prior to the filing of the termination petitions.
Based on clear and convincing evidence, the court concludes that Joanne A. has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of her children, she could assume a responsible position in the life of this child. Connecticut General Statutes § 17a-112 (c)(3)(B). "`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M. 6 Conn. App. 194,203, 504 A.2d 532 (1986). See also: In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984). CT Page 3994
As of the date of the filing of the termination petition on July 23, 1997, Joanne had not begun the necessary drug treatment and counseling to begin the long and tortuous process of abstention from drugs. She was not ready to assume a productive parenting role. Nor had she been ready to assume such a role for more than a year prior to the filing of the termination petitions for her children. Lavonne was adjudicated neglected on October 5, 1994; her sisters for the first time on November 25, 1995. All three children have been in foster care for more than two years. They cannot wait any longer for the rehabilitation of their mother, as each has immediate and strong needs for permanency.
REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-112 (e):
1) Appropriate and timely services were offered by the Department of Children and Families, including drug treatment and counseling, parent educational services, transportation assistance, and visitation assistance. Joanne has not taken part in any services on any consistent basis. No services were offered to Christopher B., except visitation services, as he has not been available to benefit from them.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible.
3) The Department entered into reasonable and realistic court expectations and service agreements in order to reunify the family. Neither parent was able to begin to meet those expectations and agreements.
4) The court finds from the evidence that Tamika and Cheree have strong emotional ties to the foster family with whom they both reside. Tamika still exhibits an attachment to her mother, but as stated by Dr. Freedman, it is a fantasy of a mother she never had. Cheree does not exhibit any connection to her mother. Lavonne resides with another foster family, where she, too, has strong ties. She has no recollection of her mother, as she has never been in her care.
5) Finding regarding the ages of the children. Tamika will be CT Page 3995 ten years old on June 12, 1998. Cheree is five years and ten months old. Lavonne four years and almost three months old.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (a) the extent to which the parents have maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. Neither the mother nor the father have done anything to adjust their circumstances to make it in the best interests of the children to be returned to them. Their contact has been sporadic and has lessened as the years have passed.
7) Finding regarding the prevention of the parents from having a meaningful relationship etc. DCF has taken many steps to encourage the mother to have a meaningful relationship with children and to rehabilitate herself, which she has been unwilling to accomplish. As to the biological father, DCF has taken all reasonable steps.
DISPOSITION
All three girls are in foster home placements where they are doing well. Lavonne has had regular contact with her two older sisters, is connected to them and they to her. Tamika is enrolled in school and receives regular weekly counseling. She has met all developmental milestones. Cheree, who is also doing well in school, is mildly developmentally delayed and is receiving help in areas concerning her physical development. Lavonne has received early intervention services to assist her with her developmental delays. She is progressing well. As previously found, only Tamika retains a slight and fanciful connection to her mother, who is not in any position to care for her or her two sisters at any time in the reasonably foreseeable future. Based upon the foregoing findings, the court determines that it is in the best interests of Tamika, Cheree and Lavonne A. that their parents' rights to them be terminated. Accordingly, a termination of the parental rights of Joanne A. and Christopher B. is ordered. It is further ordered that the Commissioner of the Department of Children and Families be appointed the statutory parent for Tamika, Cheree and Lavonne for the purpose of securing CT Page 3996 adoptive families and a permanent placement for them.
During the pendency of the petitions concerning Tamika, Cheree and Lavonne, their paternal uncle and aunt intervened for dispositional purposes only, to be considered as a possible resource for their nieces. A study of their suitability is in the early stages of being completed, but the court received no evidence concerning them. Nonetheless at the close of trial counsel stipulated that should a termination of the parental rights of these children's parents enter, that DCF would continue with their investigation. Further, after establishment of visitation, to an extent deemed suitable by DCF, an interactional psychological study between the girls and their relatives would be performed and the court so orders. In addition, the Commissioner shall file with this court no later than ninety days following the date of judgment a written report of efforts to effect such permanent placements, attaching a copy of the relative visitation schedule, and file further reports as are required by state and federal law.
Barbara M. Quinn, Judge Child Protection Session
[2] Abnormal tissue development of the bronchial tubes and the lungs.