MEMORANDUM OF DECISION
CT Page 11633
On July 29, 1989, a neglect petition was filed by the Department of Children and Families. hereafter "DCF", on behalf of Malik M., then three years old. On September 6. 1989, Malik was adjudicated a neglected child. Guardianship of Malik was vested in his father. Aliyu M. His mother, Margaret M., was given reasonable rights of visitation. On June 16, 1992, a second neglect petition was filed by DCF on behalf of Malik, and his two younger siblings, Aisha M. and Teshawn J. The allegations of the petition were as follows that: the children were left unsupervised; their mother was drug involved; their father was aware of their mother's drug usage and nonetheless allowed her to care for the children. On October 14, 1992, the children were committed to DCF as neglected and uncared-for children.
Extensions of commitment were subsequently granted to four separate occasions; September 23, 1995, March 23, 1997, March 27, 1998 and March 27, 1999 On January 23, 1997, after the children had spent almost five years in foster care, DCF filed petitions for the termination of the parental rights of Margaret M. to all three children, Aliyu M. to Malik and Aisha and of Charles J., the father of Teshawn, to this child. Paternity testing excluded Charles J. as the biological father of Teshawn and on January 21, 1998, the court so found. (Jones, J.) The court dismisses the petition as to this putative father.
DCF seeks terminations of Margaret's and Aliyu's parental rights on the following grounds: first, that both parents have abandoned the children; second, that the children were previously adjudicated neglected and that each parent had failed to achieve such degree of personal rehabilitation that, within a reasonable time, considering the age and needs of the children, such parent could assume a responsible position in the life of the children; third, that each parent has committed acts of omission and commission in that the children, have been denied the care, guidance or control necessary for their physical, educational, moral or emotional well being; and last, that none of the parents has an on-going relationship with any of the children, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the children and to allow further time for the establishment or reestablishment of such parent-child relationship would be would be detrimental to the CT Page 11634 interest of the children. Connecticut General Statutes § 17a-112(c)(3)(A)(B),(C) and (D).
The court finds that the parents were duly served, the mother has appeared and has court appointed counsel. Aliyu M., father of Malik and Aisha, did not appear and counsel has not been appointed to represent him. Notice to him was provided by publication in the New Haven Register, as New Haven was his last known place of residence. From information provided by Margaret M., it is believed that Aliyu M. returned to Nigeria, his country of origin. The court finds that service has been made in accordance with the statutes and that it has jurisdiction in this matter. Neither parent appeared at trial, however mother's counsel was present. The court finds from the evidence that mother had actual notice of the trial date. The court further finds that there are no other pending proceedings effecting the custody of these three children. The court reviewed the verified petitions, the social studies, the single exhibit entered into evidence, as well as the prior record of court proceedings, of which it took judicial notice. The court heard the testimony of Jeannette Morrison., the permanency planning social worker, who had been assigned the case during the pendency of the neglect and termination petitions.
From the evidence, the court makes the following findings:
 1. FACTS
The mother, Margaret M., is now 45 years old and has had nine children. The oldest six have reached the age of majority. None of her children are in her care, due to her on-going and continuing drug abuse. Her two oldest children were placed in foster care in 1973 due to physical abuse and poor supervision. They were in and out of foster care from 1973 until they reached the age of majority. Three of her other children have resided with their paternal grandmother since 1979. On October 6, 1994, Margaret and Aliyu's parental rights were terminated with respect to their son, Akeim, an older sibling of the three children involved in these petitions.
A. History of Irregular Visitation by Margaret M.
When Malik, Aisha and Teshawn were placed in foster care on June 12, 1992, they were placed with their adult sister, Wanda C. On August 1, 1993, Wanda C. returned her siblings to the care of CT Page 11635 their mother without the authorization of DCF. At that time, as Margaret M. had become increasingly involved in the care of her children during her frequent visits, and she was willing to work with DCF to maintain a successful reunification, the children were allowed to remain in her care. However, the children were returned to the care of their sister, Wanda, on November 23, 1993, as their mother abandoned them.
Visitation after this was erratic with substantial breaks in time. The children did not see their mother again until a month later, on December 15, 1993. In February 1994, Margaret M. went to Virginia. She did not visit her children until her return, almost two months later. Between July 1994 and January 1995, Margaret M. was incarcerated. During that time period, DCF facilitated monthly visits between Margaret and her children. Following her release from prison in January 1995, Margaret visited her two youngest children on only one occasion, in September 1995. She visited her son, Malik, on two occasions, once in September and again on Christmas, 1995.
Nevertheless, on January 2, 1996, Margaret contacted Jeannette Morrison to indicate that although she had been homeless and using drugs heavily, she was now ready to have her children returned to her care. Ms. Morrison informed her that she would need to visit her children on a regular basis and would also need to complete a substance abuse evaluation. Margaret did not follow either recommendation, nonetheless visitation continued on an irregular basis.
Between, January 1996 and April 1996, Margaret had informal visitation with Malik at his foster home. In April 1996, due to her disruptive behavior during visits at this foster home, visits were scheduled to take place weekly at the DCF office. Following that change, Margaret's last and only visit with Malik occurred on April 11, 1996. During the same time, between, January 1996 and May 1996, Margaret had informal visitation and telephone contact with her daughter, Aisha, and her son, Teshawn, at their foster home. Her contact with her two youngest children ended in May, 1996. She has not seen them or telephoned since that time. Throughout the years of their foster home placements, when Margaret was irregularly visiting her children, she continued to engage in drug abuse,
 B. Aliyu M., the father of Malik and Aisha
CT Page 11636
Aliyu M. has not seen his children, Malik and Aisha, since September 1991. His current whereabouts are unknown, although it is believed he returned to his country of origin, Nigeria. His location in that country is unknown.
 2. TERMINATION ADJUDICATION
The court finds, by clear and convincing evidence that the termination grounds pursued at trial against Margaret and Aliyu M. have been proven. The first of those grounds, abandonment, focuses on the parent's conduct. In re Michael M.,29 Conn. App. 12,632 A.2d 1122 (1993). "Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." Inre Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 14,438 A.2d 801 (1981). Margaret M. has not had any contact with Malik since April 1996, or with Aisha and Teshawn since May 1996. Aliyu M. has not been seen or heard from since September 1991. For Margaret M., the evidence has shown that her visitation with the children was sporadic and ended in the spring of 1996, more than two years ago.
The court further concludes from clear and convincing evidence that Margaret M. has abandoned all three of her children and has no-ongoing relationship with them. Aliyu M. has abandoned his two children, Malik and Aisha and has no relationship to them. "The question is whether they (the facts) substantiate a finding by clear and convincing evidence that no relationship ever existed between the parent and child, or that the relationship has terminated, without any future hope for its establishment or re-establishment." In re Midaglia M.,6 Conn. App. 194,211,504 A.2d 532 (1986); In re Juvenile Appeal (84-3),1 Conn. App. 463,473 A.2d 795, cert.denied, 193 Conn. 802,474 A.2d 1259 (1984); In re Juvenile Appeal (Anonymous),177 Conn. 648, 670-671, 420 A.2d 875 (1979). That question is answered by the clear and convincing evidence before the court. The relationship between these children and their father177 Conn. 648, 670-671, 420 A.2d 875 (1979). That question is answered by the clear and convincing evidence before the court. The relationship between these children and their father terminated in September, 1991, and with their mother in May 1996. Neither parent has done anything to reestablish it. There is no reason to believe that there is any future hope for such action on their part. CT Page 11637
The court also concludes from the clear and convincing evidence that both parents have failed to rehabilitate. Malik, Aisha and Teshawn were previously adjudicated neglected and both parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the children, they could assume a responsible position in the lives of the children. "`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Midaglia M.,6 Conn. App. 194, 203, 504 A.2d 532 (1986). See also: In reJuvenile Appeal, 1 Conn. App. 463, 477, 473 A.2d 795 cert. denied, 193 Conn., 474 A.2d 1259 (1984).
The evidence has also shown that Margaret M. has engaged in acts of omission and commission as to her three children by her on-going drug use, which has made it impossible for her to remain a functioning parent to them and has caused her to abandon them and to be unable to rehabilitate herself. By removing herself from their lives and causing their placement in foster care, she has caused them serious emotional injury.
At an extension hearing held on September 27, 1995, Margaret agreed to certain expectations entered by the court. Those expectations were as follows: keep all appointments set by or with DCF; keep whereabouts known to DCF and her attorney; visit the children as often as DCF permits — open visitation with foster homes; participate in counseling — parenting, individual and drug/alcohol; participate in a drug evaluation to determine in or outpatient recommendation; secure and maintain adequate housing and income; no substance abuse; no arrests/convictions with the criminal justice system. Margaret M. has failed to meet all of these expectations.
On January 2, 1996, Margaret contacted Jeannette Morrison at DCF, to indicate that although she had been homeless and had been using drugs heavily, she was now ready to have her children returned to her care. Ms. Morrison informed her that she would need to visit her children on a regular basis and would also need to have a substance abuse evaluation completed. She did not go for an evaluation and continued to see her children on an irregular basis, until the last visit at DCF on April 11, 1996. In Margaret's case, the evidence has shown that she cannot assume a responsible position in the lives of the children, now or at CT Page 11638 any time in the foreseeable future. The court finds, based on the clear and convincing evidence, that this ground had existed for substantially longer than one year prior to the filing of the termination petitions on January 23, 1997. As to Aliyu M., the court finds by clear and convincing evidence that he has failed to rehabilitate by virtue of his abandoning the children in September 1991. Rehabilitation within the foreseeable future is not likely. The court also finds that all grounds had existed for substantially longer than one year prior to the filing of the termination petitions.
 3. REQUIRED FINDINGS
The court makes the following factual findings required by Connecticut General Statutes § 17a-1 12(e):
(1) Appropriate and timely services were offered by the Department of Children and Families, including case management services, referrals for drug treatment and transportation to facilitate visits with her children.
(2) The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. Margaret M. received substantial services over the years to assist in her rehabilitation and reunification. Although she made sporadic efforts to participate in some of these services, she did not complete any programs. DCF has not offered her any services since May 1996, her last contact with DCF. As to Aliyu M., his whereabouts have been unknown since September 1991, therefore, the department has been unable to offer him any type of service.
(3) The DCF entered into reasonable and realistic court expectations on September 27, 1995, in order to reunify the children with their mother. Margaret M. has not been able to meet any of those expectations.
(4) The feelings and emotional ties of the children with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. Malik, Aisha and Teshawn have adjusted well to their foster families. Aisha and Teshawn view their foster mother as their mother. Malik began therapy in February 1994 to address his behavior and anger levels. He told CT Page 11639 his social worker that he misses his father and gets upset because his mother is in and out of his life.
(5) Regarding the ages of the children, Malik is 12 years old, Aisha is eight and Teshawn is six.
(6) This finding concerns the efforts of the parents to adjust their circumstances conduct or conditions to make it in the best interest of the children to return them to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitation, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. Neither parent has done anything to adjust his/her circumstances to make it in the best interest of the children to be returned home. Aisha and Teshawn do not ask about their mother on a daily basis. They only talk about their disappointment with her when she calls their foster home and indicates she will be visiting on a specific day and does not show up. The children have not seen or talked with their mother since April/May 1996. Malik has not seen his father since September 1991. It is their current foster families that have provided them with emotional support and have met their needs, and it is to them that they are attached.
(7) Regarding the prevention of the parents from having a meaningful relationship. No inappropriate conduct is noted. In fact, DCF has taken many steps to encourage Margaret M. to have a meaningful relationship with her children and to rehabilitate herself. As to Aliyu M., DCF has taken all reasonable steps.
 4 DISPOSITION
Having determined that the grounds for termination against Margaret M. and Aliyu M. have been proven by clear and convincing evidence, the court will now consider whether termination is in the children's best interest. With the exception of a three-month period in 1993, these children have been in foster care for eight years, a very long time in their lives, far too long to be without permanency and stability. "A child's sense of time is, based on the urgency of his or her instinctual and emotional needs and thus differs from an adults sense of time, as adults are better able to anticipate the future and thus to manage CT Page 11640 delay." Joseph Goldstein, Et Al., Beyond the Best Interests ofthe Child, 98, 99 (1979). Also, "the significance of parental absences depends upon their duration, frequency and the developmental time during which they occur. The younger the child, the shorter is the interval before a leave-taking will be experienced as a permanent loss accompanied by feelings of helplessness and profound deprivation. Since a child's sense of time is directly related to his capacity to cope with breaches in continuity, it becomes a factor in determining if, when and with what urgency the law should act." Ibid, p. 42. For these children, the law has taken an extraordinary length of time to provide them with stability and permanency. The court concludes, based on the clear and convincing evidence, that termination is in their best interest. Accordingly, a termination of the parental rights of Margaret M. to her three children, Malik, Aisha and Teshawn, is ordered and the rights of Aliyu M. to his two children, Malik and Aisha, is ordered. It is further ordered that the Commissioner of the Department of Children and Families be appointed the statutory parent for Malik, Aisha and Teshawn for the purpose of securing an adoptive family or a permanent placement for them. If the children's present foster parents are willing to adopt them, it is the court's direction that they be given first consideration. In addition, the Commissioner shall file with this court no later than ninety days following the date of judgment, a written report of efforts to effect such permanent placements and file further reports as are required by state and federal law.
Barbara M. Quinn, Judge Child Protection Session