[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING PETITION TO TERMINATE PARENTAL RIGHTS
This is an action for termination of parental rights which was initiated by the Department of Children and Families (DCF) concerning Thaddeus T., a minor child whose date of birth is January 25, 1995. The respondent is the child's biological mother, Valerie T. The biological father of Thaddeus T. is unknown.[1]
By petition filed with the court on February 20, 1998, DCF has alleged the following three non-consensual statutory grounds for the termination of Valerie T.'s parental rights pursuant to C.G.S. 17a-112(c): abandonment, lack of an ongoing parent-child relationship, and parental failure to rehabilitate. The petitioner further alleged, with respect to each of these counts, that each ground for termination existed for a period of time not less than one year prior to the commencement of this action.
The TPR petition was originally filed with the Superior Court for Juvenile Matters in Plainville. The case was thereafter transferred to this venue for trial.
The termination trial was heard on October 28, 1998. The respondent mother did not appear at trial, but was represented throughout the proceeding by her court-appointed lawyer, Attorney Sylvia Reed. DCF was represented at trial by Assistant Attorney General Patricia Johnson and the minor child was represented by Attorney Scott Maser.
Valerie T.'s whereabouts have been unknown at various times, and constructive notice of this matter was initially given by court-ordered legal notice publication. However, DCF Social Worker Lidia Agramonte testified at the TPR trial that she had transported the respondent to a court-ordered psychological evaluation on October 22, 1998. On that date, the worker advised the mother of the October 28th trial date and made arrangements to transport her to court. Ms. Agramonte testified that when she went to Valerie T.'s address at 8:45 a.m. on October 28th to bring her to court, the mother was not present. The worker also testified that she was informed by others there that Valerie T. had left the premises earlier that morning. Based on the forgoing, the court finds that Valerie T. had actual knowledge of the exact time, date, and place of the termination trial, and did not cooperate with DCF's attempt to provide her with transportation to court on the morning of the trial. The biological mother failed to appear in court on October 28th, and CT Page 12419 did not call her attorney, or the court clerk, to explain her absence.
At the trial, the petitioner submitted five documents into evidence as full exhibits, and also introduced the testimony of the following witnesses:
1. Dr. Robert Meier, court-appointed psychological evaluator;
2. Marlene Dennis, DCF social worker;
3. Myrtle Turner, DCF social worker;
4. Sarah G., the minor child's foster mother;
5. Lidia Agramonte, DCF social worker.
Counsel for the child and counsel for the respondent mother participated fully in the trial, but did not offer evidence or testimony.
 FACTUAL FINDINGS
The court, having carefully considered all of the evidence and testimony adduced at trial, finds that the following facts were proven by clear and convincing evidence:
Thaddeus T. was born on January 25, 1995 at Hartford Hospital. A nurse there informed DCF that the mother had used alcohol and marijuana during pregnancy and referred the baby to the agency as being "at risk." (Petitioner's Exhibit 5, Page 6).
The child was committed by the court to DCF's care and custody, as a neglected and uncared for child, on October 30, 1996. (Petitioner's Exhibit 5, Page 3). The adjudication was based upon allegations that Valerie T. had failed to attend to the child's needs for medical treatment. (Petitioner's Exhibit 2, Page 2). Thaddeus was placed in the DCF foster home of Sarah G., and he has remained there continuously through the present time. (Petitioner's Exhibit 5, Page 11).
This initial period of commitment has been extended twice, initially on September 10, 1997, and again on October 28, 1998. At the September 10, 1997 extension hearing at the Superior Court for Juvenile Matters, the court found that continuing efforts to CT Page 12420 reunify the child with his mother were no longer appropriate. (Petitioner's Exhibit 5, Page 3).
Valerie T. has an extensive and unfortunate history of homelessness, substance abuse, involvement with the criminal justice system, and absences from the lives of her children.[2]
As a result of these problems, she has not been able to function as a parent to Thaddeus, who has now been in state foster care for more than half of his life.
After Thaddeus was placed in the petitioners custody during October 1996, Valerie T. visited the child on four or five occasions prior to December, 1996. (Testimony of Sarah G.) During a supervised visit with the child at the DCF office on December 4, 1996, Valerie T. and a friend engaged in disruptive behavior in front of Thaddeus. The mother appeared to be "high". (Testimony of DCF social worker Myrtle Turner and Petitioner's Exhibit 5, Page 5). As a result of that incident, social worker Myrtle Turner informed Valerie T. that her visits with the child were being suspended until the mother could undergo a substance abuse assessment and a psychological evaluation requested by DCF. Given the nature of the behavior exhibited by the biological mother on December 4th, her criminal record, and the allegations that she engaged in substance abuse, the court finds that this action by the petitioner was both reasonable, and in the best interests of Thaddeus. The mother agreed to be evaluated, and Ms. Turner scheduled an appointment for Valerie T. at the Wheeler Clinic for December 12, 1996. When Ms. Turner arrived at the mother's residence on December 12th to drive her to the evaluation, Valerie T. refused to go, claiming that she had guests, and was doing her laundry. The social worker rescheduled the Wheeler Clinic appointment for December 14, 1996. Valerie T. failed to keep that appointment. (Testimony of Myrtle Turner).
The mother's whereabouts were unknown to DCF from December 14, 1996 until March 18, 1997, when a correctional counselor informed the agency that the mother was incarcerated. Valerie T. did not visit Thaddeus during this period, and DCF subsequently learned that the mother had been imprisoned at the Niantic Correctional Center from February 25, 1997 through April 3, 1997 on the charges of Assault Second Degree, Breach of Peace and Failure to Appear in Court. (Petitioner's Exhibit 5, Page 6). After her release from custody, Valerie T. telephoned Ms. Turner and requested visitation. The worker scheduled a meeting with the mother at the DCF offices in New Britain for April 23, 1997. CT Page 12421 Valerie T. did not appear for that appointment, and her visitation with Thaddeus remained suspended. The mother's whereabouts were thereafter unknown to DCF until July 29, 1997. (Petitioner's Exhibit 5, Page 6). On that date, Myrtle Turner met with Valerie T. at the maternal grandmother's home. Ms. Turner informed the respondent that DCF had decided to file for termination of parental rights, but also agreed to arrange a substance abuse evaluation for the mother. DCF arranged an appointment for this evaluation on September 9, 1997 at the Outpatient Counseling Center. Valerie T. appeared at the center on the scheduled date, but she claimed that she did not know why she was there and did not submit to a drug test. The test was rescheduled for the following day, but the mother failed to return to the center on September 10th. (Testimony of Myrtle Turner).
The biological mother saw Thaddeus when she attended an administrative case review at DCF in August, 1997. She did not see the child again until March 11, 1998, after the TPR petition was filed. (Testimony of Myrtle Turner). Ms. Turner, who witnessed the interaction between Thaddeus and his mother on one of those occasions, indicated that the child did not appear to recognize Valerie T. The mother has not sent gifts or cards to Thaddeus on holidays or birthdays during the nearly two years that the child has been in foster care. (Petitioner's Exhibit 5, Page 12). The child regards his foster mother as his "mommy". (Petitioner's Exhibit 5, Page 11).
Dr. Robert Meier, a court-appointed psychologist, conducted an evaluation of the respondent mother approximately one week prior to the commencement of this TPR trial. The court attaches great weight to the conclusions and opinions expressed in his written report (Petitioner's Exhibit 1) and in his testimony at trial, and accepts them as fact. In his written evaluation of the respondent. Dr. Meier noted:
 "Substance abuse appears to be a serious problem, although [Valerie T.] would not disclose the extent of use. She has not engaged in any treatment or testing with regard to drug or alcohol use, despite knowing this was expected as a condition for the return of the child. "(Petitioner's Exhibit 1, Page 8).
The psychologist also wrote that Valerie T. "exhibited poor boundaries, limited judgment and an inability to plan or organize CT Page 12422 her life." (Petitioner's Exhibit 1, Page 5). Dr. Meier also testified at trial that the mother has not given any indication of follow through with respect to treatment, and that future rehabilitation on her part would require a lengthy period of time.
Through conversations with DCF social workers, and as a result of the service agreement which she signed with the agency on December 11, 1996, (Petitioner's Exhibit 4). Valerie T. was aware that she was required to undergo a psychological evaluation and submit to a substance abuse evaluation in order to resume visitation with Thaddeus and work towards reunification with him. The clear and convincing evidence presented at trial established that DCF made repeated and appropriate efforts to refer the mother for rehabilitative services which could have assisted her to reunite with the child. These included referrals for substance abuse evaluations and a psychological evaluation, supervised visitation, DCF casework services and referral to a parent aide program. (Petitioner's Exhibit 5, Pages 4, 5, and 11). Unfortunately, Valerie T. consistently rebuffed those offers of assistance, and made no progress towards reunification with Thaddeus.
 ADJUDICATION (Based on facts through February 28, 1998) 1. Abandonment (Per C.G.S. 17a-112(c)(A): Thaddeus T., who will turn four in January, has been in foster care for nearly two years. During that time, the biological mother has abrogated her parental responsibilities and has failed to cooperate with rehabilitative steps which could have led to her reunification with the child. Valerie T. has seen her child on only a few times during the period between October 30, 1996 and February 20, 1998. As noted above, she has not sent the child gifts or cards during all the time that he has been in state care. Although DCF suspended visits in December 1996, the agency's action was justified due to the mother's behavior and demeanor during a supervised visit. The mother could have reestablished visitation with Thaddeus by complying with the agency's request that she undergo a substance abuse and psychological evaluations. Valerie T. failed to keep numerous appointments which DCF scheduled for these tests, and her whereabouts were unknown to the agency for two extended lengths of time during the period in question.
"Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not CT Page 12423 personally interact with the child, and demonstrates no concern for the child's welfare." In re Juvenile Appeal (Docket No.9489), 183 Conn. 11, 14, 483 A.2d 801 (1981). Regrettably, Valerie T. has shown little, if any, interest or concern for her child. The court finds, based upon clear and convincing evidence, that DCF has proven abandonment by the respondent mother for a period of time more than one year prior to February 20, 1998.
2. Lack of an ongoing parent-child relationship (Per C.G.S.17a-112(c)(D): "Under this section, . . . the court must first make a determination that no parent-child relationship exists and then, if so, it must determine if, in the future, the child's best interest would not be served by allowing time for the establishment or reestablishment of the relationship." In reMigdalia M., 6 Conn. App. 194, 211, 504 A.2d 532 (1986). An ongoing parent-child relationship "means the relationship that ordinarily develops as a result of a parent having met, on a day to day basis the physical, emotional, moral and educational needs of the child . . ." C.G.S. 17a-112(c)(D).
This court is mindful of the decision of our Supreme Court in the case of In re Valerie D. 223 Conn. 492, 613 A.2d 748 (1992)., which instructs that this ground for termination should not be found in those cases where a child has been removed from parental custody shortly after birth, and remains in state foster care continuously thereafter. The court finds, however, that the facts in this case are distinguishable from those in the Valerie D. matter. Thaddeus T. was born on January 25, 1995 and did not enter foster care until October 30, 1996. In the time since then, the biological mother saw the child on only a handful of occasions and, despite both notice and admonition, made virtually no effort to take the rehabilitative steps which could have enabled her to establish, or reestablish, a parent-child relationship with Thaddeus. The credible testimony at trial of Dr. Meier, Sarah G. and the DCF social workers established that the child does not recognize Valerie T. as a parental figure, and instead regards his foster mother as his "mommy." The child has been in foster care for more than two years, is nearly four years old, and is in need of permanency and stability. During the two years that the child has been in state care, Valerie T. has made no progress towards rehabilitation, and has rejected every offer of assistance made by DCF. There is no evidence which suggests that she will do otherwise in the foreseeable future.
The clear and convincing evidence at trial proved that there CT Page 12424 is no ongoing parent-child relationship between Valerie T. and Thaddeus T., and that it would be detrimental to the child's best interests to allow the respondent any additional time to establish or reestablish such a relationship. The court further finds, also based upon evidence that is clear and convincing, that this ground for termination of parental rights existed for more than one year prior to the date when the TPR petition was filed.
3. Parental failure to rehabilitate (Per C.G.S. 17a-112(c)(B):
This non-consensual ground for termination of parental rights exists where the court finds that "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . ." C.G.S. 17a-112(c)(B). As used in the forgoing statute, the term "personal rehabilitation" refers to "the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., op. cit., 203.
Thaddeus T. was adjudicated as a neglected child by the Superior Court for Juvenile Matters and committed to the care and custody of DCF on October 30, 1996. Since then, Valerie T. missed eight appointments made by DCF for drug substance abuse and psychological evaluations (Petitioner's Exhibit 5, Page 13), visited the child only a handful of times, was jailed on criminal charges, and dropped out of contact with the petitioner for two extended periods of time. There is no evidence to suggest that the biological mother undertook any rehabilitative steps toward reunification, or that she is likely to do so within a reasonable time in the future. Given the young age of Thaddeus T., the two years he has already spent in foster care, and his obvious need for a permanent, caring and stable home, it would be totally adverse to his best interests to allow the biological mother any further time to pursue reunification. DCF has proven parental failure to rehabilitate by clear and convincing evidence. It also established by clear and convincing evidence that this ground for termination existed for more than one year prior to February 20, 1998.
 DISPOSITION (Based on evidence through October 28, 1998)
Having found that the petitioner met its burden of proof with CT Page 12425 respect to the three grounds alleged for termination of parental rights, the court now focuses on the issue of whether of not termination of parental rights would be in the best interests of Thaddeus T.
The child, who will turn four years old next January, has been in the foster care of Sarah G. for more than half of his life. The biological mother has only visited the child a few times during that period. Valerie T.'s demeanor and disruptive behavior in the presence of the child during a supervised visit caused DCF to suspend visitation until the mother could undergo a psychological evaluation and substance abuse assessment. The mother failed to cooperate with appointments for those evaluations, and as a result has not had DCF approved visits with Thaddeus since December 4, 1996. Valerie T.'s behavior, substance abuse, lack of cooperation with DCF and inaction concerning treatment caused her estrangement from the child, who no longer recognizes the biological mother as a parental figure.
Thaddeus has thrived in the foster home of Sarah G. The court finds that the child views his foster mother as his psychological parent. The DCF social study notes that "The foster parent, [Sarah G.] has been meticulously attentive to meet child's medical, emotional, physical, and environmental needs." (Petitioner's Exhibit 5, Page 8). The study also stated:
 "He has plenty of clothes. He is well groomed. He has been taught the alphabet and given instructions on manners and how to count numbers. . . . This social worker has seen significant improvement in this child's demeanor and overall sense of well-being since being placed in . . . this home. Foster parent, [Sarah G.] has had a tremendous affect on Thaddeus' upbringing, to encourage him to become a healthy, happy and secure child." (Petitioner's Exhibit 5, Pages 8, 9).
Sarah G. wishes to adopt Thaddeus. Dr. Meier has concluded that the child "is attached to the foster mother, and has developed a sense of security and well-being in her care." (Petitioner's Exhibit 1, Page 9). Dr. Meier concluded his written report by stating that: "It is the opinion of this evaluator that it is in the bests interests of Thaddeus to seek permanency for him as soon as possible." CT Page 12426
The court concurs with that recommendation. While Thaddeus has contended with the uncertainty of his foster care status for two years, the mother has displayed little interest in the child. She has demonstrated neither the ability, nor the desire, to take the affirmative steps which could reunite her with this child. Thaddeus needs the permanency of a loving adoptive home, which his caring foster parent wishes to provide. DCF has proven by clear and convincing evidence during this trial that termination of parental rights and adoption are in the bests interests of this child.
 STATUTORY FINDINGS
Pursuant to C.G.S. 17a-112(e), the court has considered the following findings in connection with its determination regarding termination of parental rights:
1. Appropriate and timely services were offered, provided and made available to Valerie T. These included the offer of a psychological evaluation, repeated appointments for substance abuse evaluations, referral to a parent aid program, supervised visitation, offers of transportation and DCF casework services. The biological mother failed to cooperate with the services offered.
2. As noted above, the court has found by clear and convincing evidence that DCF made timely and appropriate efforts, on a repeated basis, to reunite Valerie T. with her child, as mandated by the federal Adoption Assistance and Child Welfare Act of 1980, as amended. These efforts were rebuffed by Valerie T.
3. No court orders were issued in this case. Valerie T. signed a written "Service Agreement" with DCF on December 11, 1996. In that agreement, DCF offered to restore mother's visitation once she underwent psychological and substance abuse evaluations which DCF agreed to arrange. (Petitioner's Exhibit 4) The biological mother failed to keep numerous appointments which DCF arranged for those evaluations. Clear and convincing evidence adduced at trial established that Valerie T. was aware of the steps which she needed to undertake in order to pursue personal rehabilitation and reunification with her son, and that DCF was ready and willing to facilitate rehabilitative services for the respondent.
4. Thaddeus T. has a close emotional bond with his foster CT Page 12427 mother, Sarah G., who has been his primary caretaker during the past two years. The child regards his foster mother as his "mommy," and the court has found that Sarah G. is Thaddeus' psychological parent. The child does not recognize the biological mother as a parental figure.
5. Thaddeus is three years old. His date of birth is January 25, 1995.
6. Valerie T. has made no efforts to adjust her circumstances, conduct and conditions so as to make it in the child's best interests to return him to his mother's home in the foreseeable future. During the two years that the child has been in DCF's care, the mother visited the child on only a few occasions. After Valerie T.'s conduct and demeanor prompted DCF to suspend her visits with Thaddeus in December of 1996, the mother failed to cooperate with the evaluations which would have resulted in the restoration of her visiting privileges. During the period that the child has been in DCF custody, the mother was incarcerated, and dropped out of contact with DCF for two extended periods of time. The child does not recognize Valerie T. as his mother, and she has not sent the child cards or gifts at any time during the past two years. There is no evidence that the mother has received any kind of treatment or of rehabilitative service which would lead to her reunification with Thaddeus. Valerie T.'s lack of interest in this child is tellingly demonstrated by the fact that she failed, without any type of explanation, to attend this termination of parental rights trial.
7. As noted above, the petitioner's decision to suspend the mother's visitation rights until she underwent a substance abuse evaluation and psychological testing was justified by the biological mother's disruptive behavior and demeanor in the presence of the child, her criminal record, and allegations that she had engaged in substance abuse. The court finds that the respondent mother was not prevented from maintaining a meaningful relationship with Thaddeus by any unreasonable act or conduct of the petitioner, or any other person or entity, or by any adverse economic circumstances which the respondent may have experienced.
 JUDGMENT AND ORDERS
Having found by clear and convincing evidence that the petitioner has proven the statutory grounds alleged in the petition for termination of parental rights, having made and CT Page 12428 considered the seven mandated findings listed above, and having found by clear and convincing evidence that termination is in the best interests of the subject minor child, it is hereby ORDERED
that the parental rights of the respondent Valerie T. with respect to the minor child Thaddeus T., be, and hereby are,TERMINATED. The court further orders that the Commissioner of the Department of Children and Families be appointed the statutory parent of said child, for the purposes of placing him in adoption, or securing other appropriate permanent placement. Said Commissioner shall report to this court, in writing, as to the progress being made towards the child's adoption or permanent placement within 90 days of the date hereof. If the child's adoption has not been finalized within six months from the date of this judgment, the Commissioner is further ordered to submit a motion for review of plan for a terminated child.
Judgment shall enter accordingly.
BY THE COURT:
DYER, J.