[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING PETITION TO TERMINATE PARENTAL RIGHTS
The Department of Children and Families (DCF) has initiated this action to terminate parental rights concerning Beronica D., a minor child whose date of birth is September 11, 1997. The respondents are Natacha D., the child's biological mother, and Jose C., Beronica's biological father. The court has found that proper service was made upon each parent, that each had notice of the proceeding, and that the court has jurisdiction in this matter. CT Page 13086
In petitions filed with the court on July 10, 1998, DCF originally alleged the following four statutory grounds for termination against each respondent: abandonment, parental failure to rehabilitate, lack of an ongoing parent-child relationship,[1] and parental failure to rehabilitate by the parent of a neglected child under seven years of age, when said parent's rights have previously been terminated with respect to another child.
Julia D., who is the mother of the respondent, Natacha D., and the maternal grandmother of Beronica D., was granted intervenor status for the dispositional phase of this proceeding.
The trial was held at the Superior Court for Juvenile Matters on November 5, 1998. The petitioner was represented by Assistant Attorney General James Kelly and the minor child was represented by Attorney Scott Sandler. Neither parent attended the trial, nor contacted the court to offer explanations for their absences. The biological mother, Natacha D., was represented at trial by her court appointed counsel, Attorney Marcia McCormack. The intervenor, Julia D., was present at the trial and was assisted throughout it by her lawyer, Attorney Norma Sanchez-Figueroa.
DCF Social worker Zaira Reyes testified for the petitioner during the trial. DCF also submitted four documents into evidence. The intervening maternal grandmother, Julia D., also testified on her own behalf at trial.
 FACTUAL FINDINGS
The court, having carefully considered the testimony and evidence adduced at this trial, finds that the following facts were proven by clear and convincing evidence:
Beronica was born prematurely on September 11, 1997 at Hartford Hospital. (Testimony of Zaira Reyes). On the date of delivery, both the mother and the child tested positive for cocaine and opiates. (Petitioner's Exhibit 1, Page 3). As a result of her in-utero exposure to those dangerous narcotics, Beronica exhibited withdrawal symptoms after birth, and was in a medically fragile state which required her hospitalization and treatment until October 1, 1997. (Testimony of Zaira Reyes).
DCF filed neglect petitions and ex parte applications for the child's temporary custody on September 29, 1997. The child was CT Page 13087 placed in DCF custody following her discharge from the hospital, and she has remained in foster care through the present time.[2] Beronica was committed to DCF as a neglected child on November 13, 1997. (Testimony of Zaira Reyes).
At the time of commitment, eight reunification expectations were set for the biological parents by the court. (Testimony of Zaira Reyes). These expectations included requirements that: 1. Jose C. and Natacha D. complete appropriate drug treatment programs and pass random drug tests; 2. that the mother attend individual counseling; 3. that the mother participate in and complete a parent education course and follow the recommendations of that program; 4. that both parents remain drug free; 5. that both parents secure and maintain adequate legal sources of income; that each parent secure and maintain a safe and stable home with adequate space for the children; and, 8. that both parents maintain weekly contact with their children according to a schedule authorized by DCF. (Petitioner's Exhibit 4, Pages 8 and 9). Although these expectations were apparently never signed by either respondent, the court finds that they provided clear notice to Natacha D. and Jose C. of the specific steps which they needed to take in order to achieve reunification with Beronica.
Beronica is the fifth child born to Natacha D. (Petitioner's Exhibit 1, Page 3). As a result of the biological mother's extensive history of polysubstance abuse, criminal activity, parental neglect and transient lifestyle, she does not have custody of any of these children. (Petitioner's Exhibit 1, Page 2). Natacha D.'s two oldest children, Marcos C. (d.o.b. April 1, 1990) and Amanda C. (d.o.b. December 23, 1991) have been in the care of Ana L., their paternal grandmother since birth. The paternal grandmother also has guardianship of Natacha D.'s third oldest child, Samantha D., whose date of birth is April 27, 1993. (Petitioner's Exhibit 1, Page 2). On March 4, 1998, Natacha D.'s parental rights with respect to her fourth child, Pearl Xenia A. (d.o.b. January 11, 1996), were terminated pursuant to a petition filed by the Commissioner of the Department of Children and Families. (Petitioner's Exhibit 1, Page 3). Beronica and Pearl Xenia now reside together in the same foster home. Beronica's foster parents are the prospective adoptive parents of Pearl Xenia.
Jose C. has never seen nor visited his daughter. He has never requested visitation with the child and he called the DCF social worker assigned to Beronica's case on only one occasion. The CT Page 13088 social worker's last contact with Jose C. was on October 15, 1997. The father has never sent gifts, cards or letters to Beronica and has never paid financial support for her benefit. (Petitioner's Exhibit 1, Page 8). There is no evidence to suggest that the biological father has undertaken any steps to establish a relationship with his daughter, or that he wishes to do so. He has never requested services from DCF.
After Beronica's birth, Natacha D. was incarcerated in September and October of 1997. She was imprisoned again from November 21, 1997 until January 18, 1998 (Testimony of Zaira Reyes). On December 17, 1997, Social Worker Reyes received a telephone call from the mother's correctional counselor, requesting visitation for the mother. The worker and the mother met at a hearing on January 28, 1998. Ms. Reyes informed the mother that she could commence visits with Beronica if she cooperated with a substance abuse evaluation. DCF made arrangements for drug/alcohol assessments of the mother, first at the Alcohol Drug Recovery Center (ADRC), and subsequently at the Wheeler Clinic. The respondent failed to keep those appointments on January 20, 1998 and April 21, 1998 (Testimony of Zaira Reyes, and Petitioner's Exhibit 1, Page 9.)
The mother has never visited the child since September 15, 1997, and DCF never authorized visits or gave the respondent the address of either foster home where Beronica resided. Natacha D. sporadically requested visitation from DCF, but never cooperated with the substance abuse assessment which DCF required as a precondition for parent-child contact. The court finds that the petitioner's insistence on such an evaluation was reasonable and in the best interests of the child's welfare, given the mother's prior history of chronic substance abuse, and in light of the physical and emotional harm which her narcotics use had already inflicted upon Beronica.
Per Ms. Reyes, Natacha D.'s last contact with DCF occurred on July 17, 1998. Of the four contacts that the mother made with DCF, two occurred when Natacha D. was incarcerated. The mother has never paid support for Beronica, nor sent the child cards or gifts. (Petitioner's Exhibit 1, Page 8).
Clear and convincing evidence at trial established that the petitioner made reasonable, timely and appropriate efforts to reunify the child with the biological parents. DCF referred Natacha D. to the UConn Medical Center drug rehabilitation CT Page 13089 program, ADRC and the Wheeler Clinic, but the respondent failed to cooperate with any of those referrals. (Petitioner's Exhibit 1, Page 10). The mother also had the opportunity to participate in an intensive drug rehabilitation program known as "Hogar Crea", but declined to do so. DCF also offered the mother individual counseling and a parent education course (Petitioner's Exhibit 4, Pages 8 and 9), plus casework services, and visitation if she complied with substance abuse assessment. The expectations which were entered when Beronica was committed to DCF indicate that the petitioner offered to provide the biological father with supervised visitation, drug treatment and casework services. (Petitioner's Exhibit 4, Pages 8 and 9). The clear and convincing evidence at trial established that neither parent took advantage of the services offered, nor demonstrated any interest in reunification with Beronica.
 Adjudication as to Natacha D. (Based on evidence as of July 10, 1998) 1. Abandonment (Per C.G.S. 17a-112(c)(A)): This non-consensual ground for termination of parental rights ". . . occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child and demonstrates no concern for the child's welfare." In re Juvenile Appeal (Docket No. 9489), 183 Conn. 11,14, 483 A.2d 801 (1981). Suscinctly stated, the court finds that the forgoing description accurately summarizes the conduct and behavior exhibited by Natacha D. towards the minor child in this case. The respondent's lack of interest in her child is also reflected in the fact that she failed to appear at this trial. The petitioner proved by the clear and convincing evidence set forth in detail above that the biological mother abandoned Beronica.
2. Parental failure to rehabilitate (Per C.G.S. 17a-112(c)(B):
The court may find grounds for termination of parental rights under this section if it determines that "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . ." C.G.S. 17a-112(c)(B). As used in this statute, the term "personal rehabilitation" refers to "the restoration of a parent to his or her former CT Page 13090 constructive and useful role as a parent." In re Migdalia M.,6 Conn. App. 194, 203, 504 A.2d 532. (1986). Natacha D. has not cooperated with DCF's repeated requests that she undergo substance abuse screening in order to visit Beronica. She has displayed no interest in cooperating with DCF, and has not requested services from that agency. She had the opportunity to receive intensive drug treatment through the Hogar Crea program but did not take advantage of that chance for therapy. The respondent has not been able to care for any of her five children, and has lost her parental rights with respect to Pearl Xenia. Beronica, now 14 months old, has already lived in two foster homes, and has spent every day of her life since discharge from the hospital in state custody. She was committed, as a neglected child, to the petitioner on November 13, 1997. DCF has proven by clear and convincing evidence that Natacha D. has failed to achieve the necessary degree of personal rehabilitation. The court also finds, based upon clear and convincing proof that there is no reason to believe that the biological mother will be able to assume a responsible position in Beronica's life within a reasonable time.
3. Parental failure to rehabilitate, prior termination (Asper C.G.S. 17a-112(c)(E)): The statute provides that this adjudicatory ground for termination may be found by the court in those cases where:
 "the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the ages and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families." C.G.S. 17a-112(c)(E).
Natacha D.'s parental rights with respect to her child, Pearl Xenia, were terminated pursuant to a DCF petition by the Superior Court for Juvenile Matters on March 4, 1998. Beronica is under seven years of age. Based on the totality of the evidence recounted at length above, the court finds that the biological mother has taken no steps towards personal rehabilitation, and will not be able to assume a responsible position in her daughter's life within a reasonable time. DCF has also proven this ground for CT Page 13091 termination by clear and convincing evidence.
 Adjudication as to Jose C. (Based on evidence as of July 10, 1998) 1. Abandonment (Per C.G.S. 17a-112(c)(A): Jose C. has never visited, nor seen Beronica. He has not financially supported the child, and he has not sent her cards or gifts. His last contact with DCF concerning Beronica occurred in October 1997. He does not participate in any manner of the child's life, and he has demonstrated no desire to do so. Jose C. did not appear at this trial. The court finds that DCF has proven this statutory ground for termination of parental rights by clear and convincing evidence.
2. Parental failure to rehabilitate (Per C.G.S. 17a-112(c)(B):
Jose C. has never requested services from DCF, and, despite court-approved expectations, he did not participate in any type of rehabilitative or reunification program after Beronica was committed as a neglected child to DCF. He has demonstrated no interest in acting as a parent for Beronica. Evidence which was both clear and convincing established that the biological father failed to achieve a degree of personal rehabilitation sufficient to enable him to play a responsible parental role in Beronica's life. That same evidence also proved that he will no do so within a reasonable time.
3. Parental failure to rehabilitate, prior termination(Per C.G.S. 17a-112(c)(E): There was no evidence presented at this trial that Jose C.'s parental rights had been previously terminated with respect to another child. DCF did not prove this count of the termination petition by clear and convincing evidence. It is hereby DISMISSED.
 Disposition as to both respondents (Based on evidence through November 5, 1998)
Having found that grounds for termination were proven with respect to both Natacha D. and Jose C., the court now considers the issue of disposition. The petitioner must prove by clear and convincing evidence during this portion of the non-bifurcated proceeding that termination of parental rights would be in the best interests of Beronica D.
As noted above, Julia D., the child's maternal grandmother; was granted intervenor status in this matter. Julia D. argued CT Page 13092 that termination was not in Beronica's best interests because she (the grandmother) could serve as a relative placement resource for the child. The intervenor maintained that it would be preferable to place the child with a relative than to have her adopted by persons who were unrelated. Julia D. also contended that DCF had violated the federal Adoption Assistance and Child Welfare Act (42 U.S.C. § 671) because the petitioner failed to adequately consider her request for custody of Beronica.
Natacha D. and Julia D. requested that Beronica be placed with the grandmother around the time that the order of temporary custody was issued. DCF refused the request, believing then that the child's medical situation necessitated placement in a foster home after her discharge from the hospital. (Testimony of Zaira Reyes). DCF Social Worker Reyes subsequently visited the maternal grandmother's home, ran criminal records checks on Julia D. and the man with whom she resided, reviewed the case record and discussed the grandmother's custody request with her supervisor. (Testimony of Zaira Reyes). Ms. Reyes did not suggest that the grandmother fill out the paperwork which the agency requires prospective custodians to complete. (Testimony of Zaira Reyes). In January 1998, the social worker informed Julia D. and her attorney that the grandmother would not be recommended for custody of Beronica. The petitioner's social study indicated that: "DCF did not recommend this placement due to concerns of poor parenting skills, inappropriate space and her financial situation." (Petitioner's Exhibit 1, Page 6).
Social Worker Reyes amplified on that explanation during testimony at trial. Ms. Reyes said that the grandmother lived in a one-bedroom apartment that would not provide enough space for Beronica. She indicated that Julia D. had had a troubled relationship with her daughter Natacha, who left home at age 15, and that several of the grandmother's children had criminal histories. The social worker stated that Julia D. had not sought custody of Natacha D.'s three older children, had not sought temporary custody of Beronica'a half sister, Pearl Xenia, when the OTC for that child was granted in 1996, and did not indicate a desire to adopt Pearl Xenia (Beronica has now been reunited with Pearl Xenia in a foster home where the foster parents are willing to adopt both children, and raise them together[3]).
The court finds that Ms. Reyes' testimony on this issue was credible, and that DCF's reasons for placing the child with a foster home rather than with the maternal grandmother were CT Page 13093 appropriate and in Beronica's best interests. Although the court recognizes that Julia D. loves her grandchild, the intervenor did not prove that DCF failed to consider her as a potential placement. Nor did Julia D. prove that Beronica's placement with her, as opposed to placement in the current foster home, would be in the child's best interests.
As noted above, Beronica now resides in the same foster home with her half-sister, Pearl Xenia. Pearl Xenia, who was also born addicted to drugs, has already been freed for adoption in an earlier TPR proceeding. The foster parents with whom Pearl Xenia now resides are her prospective adoptive parents. These parents also wish to adopt Beronica and raise the two sisters together. Beronica and Pearl Xenia have bonded together since being placed in this home. Beronica, who is now more than 14 months old and has already lived in two foster homes, has never known her biological parents. She has bonded with her current foster parents, and has made "significant gains developmentally and socially" while in their care. (Petitioner's Exhibit 1, Page 11). It is obvious that this child desperately needs the permanency, stability and love which both of her biological parents are unable to provide.
The petitioner has proven by clear and convincing evidence that termination of parental rights is in Beronica's best interests.
 STATUTORY FINDINGS
In making its findings and rulings with respect to termination of parental rights in this matter, the court has made and considered the following legal findings mandated by C.G.S.17a-112(e):
1. The court finds, based upon clear and convincing evidence, that DCF offered timely and appropriate services to both respondents in order to facilitate their reunification with Beronica. For the biological mother, these services included referrals for substance abuse assessment and treatment at the UConn Medical Center drug rehabilitation unit, ADRC, and the Wheeler Clinic. The mother also had the opportunity to receive drug treatment at "Hogar Crea". DCF offered the mother visitation with Beronica once she underwent a substance abuse assessment, and casework services. The mother failed to cooperate with the services offered. The petitioner offered the biological father CT Page 13094 visitation with his child. He did not request any services from DCF, and has not displayed any interest in playing a parental role in Beronica's life. (Petitioner's Exhibit 1, Page 7).
2. Based upon clear and convincing evidence adduced during trial, the court finds that the petitioner made reasonable efforts to reunite Beronica with each of her biological parents, pursuant to the Adoption Assistance and Child Welfare Act of 1980, as amended.
3. No court orders were entered in this case. As outlined in Petitioner's Exhibit 4, Pages 8 and 9, court-approved expectations were set for both parents at the time Beronica was committed to DCF. These expectations gave notice to both respondents of the specific steps which were necessary for each of them to achieve reunification with their child.
4. Beronica does not know either of her biological parents. She has significant emotional attachments with her foster parents, and her half-sister, Pearl Xenia (Petitioner's Exhibit 1, Page 11).
5. Beronica is 14 months old. Her date of birth is September 11, 1997.
6. Neither parent has made meaningful efforts to adjust his or her circumstances, conduct or conditions so as to make it in the best interests of Beronica to return her to either biological parent's home within the foreseeable future. The court notes that neither parent has visited the child, and neither attended this trial.
7. Given the mother's prior history of neglectful conduct and substance abuse, the court finds that the petitioner was justified in requiring Natacha D. to undergo a substance abuse assessment as a condition of visitation with her child. The biological mother chose not to do so. The court finds that no unreasonable act of the petitioner, or any other person or entity, and no adverse economic circumstance, prevented either respondent from maintaining a meaningful relationship with Beronica.
 JUDGMENT AND ORDERS
Having found that statutory grounds for termination were CT Page 13095 proven by clear and convincing evidence as to both respondents, having made and considered the seven findings enumerated above, and having found, based upon clear and convincing evidence, that termination of each respondent's parental rights is in the best interests of the minor child, it is hereby ORDERED that the parental rights of Natacha D. and Jose C. in and to the minor child, Beronica D., are hereby terminated. It is further ordered that the Commissioner of the Department of Children and Families be appointed the statutory parent of said child for the purpose of facilitating adoption or other permanent placement for her. Said Commissioner shall file a report with this court within 90 days of the date of this judgment detailing the progress made towards Beronica's adoption. If said child has not been adopted within six months from the date hereof, the Commissioner shall file a Motion for Review of Plan for Terminated Child with this court at that time.
Judgment shall enter accordingly.
BY THE COURT:
Dyer, J.